1   Carolyn H. Cottrell (SBN 166977)
    Ori Edelstein (SBN 268145)
2   Michelle S. Lim (SBN 315691)
    SCHNEIDER WALLACE
3   COTTRELL KONECKY
    WOTKYNS LLP
4   2000 Powell Street, Suite 1400
    Emeryville, California 94608
5   Telephone: (415) 421-7100
    Facsimile:  (415) 421-7105
6   ccottrell@schneiderwallace.com
    oedelstein@schneiderwallace.com
7   mlim@schneiderwallace.com

8   Attorneys for Plaintiff, the Collective,
    and putative Class
9
    *Additional Counsel on the following page*
10

11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12

13   PAUL MONPLAISIR, on behalf of himself        Case No. 3:19-cv-01484-WHA
     and all others similarly situated,
14                                                **PLAINTIFF'S NOTICE OF MOTION**
                        Plaintiff,                **AND MOTION FOR CONDITIONAL**
15                                                **CERTIFICATION AND TO FACILITATE**
                  vs.                             **NOTICE PURSUANT TO 29 U.S.C. §**
16                                                **216(b); MEMORANDUM OF POINTS**
     INTEGRATED TECH GROUP, LLC and               **AND AUTHORITIES IN SUPPORT**
17   ITG COMMUNICATIONS LLC,                      **THEREOF**

18                      Defendants.               Judge: Hon. William Alsup
                                                  Date: July 25, 2019
19                                                Time: 8:00 a.m.
                                                  Ctrm.: 12, 19th Floor
20
                                                  Complaint Filed:  March 21, 2019
21                                                Trial Date:     None

22

23

24

25

26

27

28

1

2

Sarah R. Schalman-Bergen (admitted *pro hac vice*)
Krysten Connon (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604

Attorneys for Plaintiff, the Collective,
and putative Class

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  TO ALL PARTIES AND ATTORNEYS OF RECORD:

2      NOTICE IS HEREBY GIVEN that on July 25, 2019, at 8:00 a.m. in Courtroom 12, 19th

3  Floor, before Judge William Alsup of the United States District Court, Northern District of

4  California, Plaintiff Paul Monplaisir ("Plaintiff") moves the Court, pursuant to 29 U.S.C. § 216(b)

5  of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), for conditional certification to

6  proceed as a collective action and facilitate notice ("Section 216(b) Motion") to the following

7  proposed collective:

8      All current and former non-exempt hourly employees of Defendants
       Integrated Tech Group, LLC and ITG Communications LLC working
9      as technicians throughout the United States during the time period
       three years prior to the filing of the complaint until resolution of this
10     action ("Collective" or "Technicians").

11     This Section 216(b) Motion is based on this notice; the following supporting authority and

12 arguments; the Declaration of Ori Edelstein in Support of Plaintiff's Motion for Conditional

13 Certification and to Facilitate Notice Under 29 U.S.C. § 216(b); the declarations of the named

14 Plaintiff who has opted in to this case, the declarations of opt-in plaintiffs John Cason, Marcus

15 Byrdie, Sterling Francois, Joel Gauthier, Robenson Jean Pierre, Raphael Parris, Jacky Charles, and

16 Eliezer Vermeille; and any other argument the Court may consider.

17     Accompanying this motion are also: (1) Plaintiff's Proposed Order Granting Plaintiff's

18 Motion for Conditional Class Certification and to Facilitate Notice under 29 U.S.C. § 216(b); (2)

19 Plaintiff's Proposed Notice of Collective Action Lawsuit, attached as Exhibit D to the Edelstein

20 Declaration; (3) Plaintiff's Proposed Opt-in Consent Form, attached as Exhibit E to the Edelstein

21 Declaration; and (4) Plaintiff's Proposed short form Notice for facilitation via text message,

22 attached as Exhibit F to the Edelstein Declaration.

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................1

II.  FACTUAL BACKGROUND..................................................................................................3

    A.   ITG Employs Non-Exempt Technicians Across the Country Who Are Subject to
        Similar Policies and Procedures..................................................................................3

    B.   ITG Technicians Perform Similar Duties Regardless of Location ...........................4

    C.   ITG Technicians' Work Similar Schedules Regardless of Location ........................6

    D.   Technicians' Compensation Is Not Received Free and Clear ...................................7

    E.   ITG's Technician Compensation Model Results In Systemic Wage Violations........9

III. ARGUMENT ........................................................................................................................10

    A.   Legal Standard for Conditional Certification and Facilitation of Notice Under the
        FLSA........................................................................................................................10

    B.   This Case Should Be Conditionally Certified and Notice Should Be Authorized
        Because The Proposed Collective Is Similarly Situated..........................................12

        1.   ITG Subjects All Technicians to the Same Unlawful Compensation and
            Overtime Policies........................................................................................14

        2.   Technicians Have Similar Job Duties, Responsibilities, Work Hours, and
            Compensation ..............................................................................................15

        3.   Similar Cases Have Been Certified.............................................................16

    C.   Notice Should Issue Regardless of Whether Potential Opt-in Plaintiffs Have Signed
        Arbitration Agreements ...........................................................................................17

    D.   Notice is Appropriate and Necessary to Protect Collective Members' Rights.........19

IV. CONCLUSION .....................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Systems, Inc*
    242 F.R.D. 530 (ND Cal. 2007)..................................................................12, 20, 21

*Beasley v. Custom Commc'ns, Inc.*
    No. 5:15-CV-583-F, 2016 WL 5468255 (E.D.N.C. Sept. 28, 2016).........................16

*Benedict v. Hewlett-Packard Co.*
    2014 WL 587135 (N.D. Cal. 2014) .......................................................................11

*Benoit v. Tri-Wire Eng'g Sols., Inc.*
    No. CV 07-30237 (D. Mass. June 4, 2008) ............................................................16

*Bonner v. SFO Shuttle Bus Co.*
    No. C13–1606 THE, 2013 WL 6139758 (N.D. Cal. Nov. 21, 2013) .........................13

*Brewer v. Gen. Nutrition Corp.*
    No. 11–CV–03587 YGR, 2013 WL 100195  (N.D. Cal. Jan. 7, 2013) ......................13

*Brown v. Permanente Med. Grp.*
    2017 WL 1536493 (N.D. Cal. Feb. 2, 2017) .....................................................11, 13

*Calvillo v. Bull Rogers, Inc.*
    267 F. Supp. 3d 1307, 2017 WL 3172843 (D.N.M. July 25, 2017) ..........................21

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*
    No. 15-CV-04456-PJH, 2018 WL 6727825 (N.D. Cal. Dec. 21, 2018)........................13, 17, 19

*Campbell v. City of Los Angeles*
    903 F.3d 1090 (9th Cir. 2018) ........................................................................ passim

*Carter v. Anderson Merchandisers, LP*
    2008 WL 2783193 (C.D. Cal. July 10, 2008) ....................................................12, 21

*D'Antuono v. C & G of Groton, Inc.*
    2011 WL 5878045 (D. Conn. Nov. 23 2011) .........................................................19

*Daniels v. Aeropostale W., Inc.*

  2013 WL 1758891 (N.D. Cal. Apr. 24, 2013) ....................................................................11, 13

*Deatrick v. Securitas Security Services USA, Inc.*

  2014 WL 5358723 (N.D. Cal. Oct. 20, 2014)....................................................................19, 21

*Dudley v. TrueCoverage LLC*

  2018 WL 6431869 (C.D. Cal. Sep. 28, 2018)..........................................................................21

*Escobar v. Whiteside Const. Corp.*

  No. C 08-01120 WHA, 2008 WL 3915715 (N.D. Cal. Aug. 21, 2008) ............................12, 13

*Fenley v. Wood Grp. Mustang, Inc.*

  170 F. Supp. 3d 1063 (S. D. Ohio 2016) ................................................................................21

*Flores v. Velocity Exp., Inc.*

  No. 12–cv–05790–JST, 2013 WL 2468362 (N.D. Cal. June 7, 2013) .......................................13

*Gee v. Suntrust Mortg., Inc.*

  No. C–10–1509 RS, 2011 WL 722111 (N.D. Cal., Feb.18, 2011)............................................21

*Guilbaud v. Sprint/United Mgmt. Co., Inc.*

  2014 WL 10676582 (N.D. Cal. Oct. 3, 2014).....................................................................11, 13

*Harris v. Vector Mktg. Corp.*

  716 F. Supp. 2d 835  (N.D. Cal. 2010) ...................................................................................13

*Hernandez v. Immortal Rise, Inc.*

  2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) ........................................................................19

*Hernandez v. United Auto Credit Corp.*

  2010 WL 1337702 (N.D. Cal. Apr. 2, 2010) ..........................................................................12

*Hill v. R + L Carriers, Inc.*

  690 F. Supp. 2d 1001 (2010) .................................................................................................14

*Hoffman-La Roche, Inc., v. Sperling*

  493 U.S. 165 (1989).........................................................................................................19, 20

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.,* Case No. 3:19-cv-01484-WHA

*In re JPMorgan Chase & Co.*

   916 F.3d 494 (5th Cir. 2019) ......................................................................................19

*Irvine v. Destination Wild Dunes Management, Inc.*

   132 F. Supp. 3d 707 (D.S.C. Sept. 14, 2015)..........................................................21

*Jason v. Falcon Data Com, Inc.*

   No. 09-cv-03990 (JG)(ALC), 2011 WL 2837488 (E.D.N.Y. July 18, 2011)............17

*Joiner v. Groupware Int'l, Inc.*

   No. 8:09–cv–1943–T–26MAP, 2010 WL 2136533 (M.D. Fla. May 27, 2010)........17

*Lewis v. Wells Fargo & Co.*

   669 F. Supp. 2d 1124, (N.D. Cal. 2009) ............................................................11, 13

*Luethold v. Destination Am., Inc.*

   224 F.R.D. 462 (N.D. Cal. 2004)..............................................................................11

*Luque v. AT&T Corp.*

    No. C 09–05885 CRB, 2010 WL 4807088 (N.D. Cal., Nov. 19, 2010)...................13

*Maddy v. General Electric Co.*

   59 F. Supp. 3d 675 (D.N.J. 2014) .............................................................................19

*Misra v. Decision One Mortg. Co., LLC*

   F. Supp. 2d 987 (C.D. Cal. 2008) .............................................................................13

*Monroe v. FTS USA, LLC*

   860 F.3d 389 (6th Cir. 2017) ....................................................................................16

*Perez v. Shucks Maine Lobster LLC*

   No. 2:15-CV-00348-JAW, 2016 WL 6304674 (D. Me. Oct. 27, 2016).....................16

*Petty v. Russell Cellular, Inc.*

   No. 2:13-cv-1110, 2014 WL 1308692 (S.D. Ohio Mar. 28 2014) ............................21

*Phelps v. MC Comm'cs, Inc.*

   No. 2:11-cv-42, 2011 WL 3298414 (D. Nev. Aug. 1, 2011).....................................21

iv

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.,* Case No. 3:19-cv-01484-WHA

*Prejean v. O'Brien's Response Mgmt., Inc.*

    No. 12-cv-1045, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) ....................................................21

*Ramirez v. Ghilotti Bros. Inc.*

    941 F. Supp. 2d 1197 (N.D. Cal. 2013) ...................................................10, 11, 13, 14

*Rother v. Lupenko*

    515 Fed. Appx. 672 (9th Cir. 2013) ........................................................................14

*Saravia v. Dynamex, Inc.*

    310 F.R.D. 412 (N.D. Cal. 2015)..........................................................13, 17, 18, 19

*Sigui v. M&M Commc'ns, Inc.*

    No. CV 14-442 (D.R.I. April 4, 2017) ....................................................................16

*Soto v. O.C. Communications*

    No. 17-cv-00251 (N.D. Cal. Aug. 31, 2017) ...........................................................16

*Taylor v. Bear Commc'ns, LLC*

    No. 4:12–CV–01261–BCW, 2013 WL 3270971 (W.D. Mo. June 27, 2013) ...........17

*Tennessee Coal Iron & R. Co., v. Muscoda Local No. 123*

    321 U.S. 590 (1944)................................................................................................10

*Williams v. Grayco Cable Servs., Inc.*

    187 F. Supp. 3d 760 (S.D. Tex. 2016) .....................................................................17

*Woods v. Club Cabaret, Inc.*

    140 F. Supp. 3d 775 (C.D. Ill. 2015) .......................................................................19

*Woods v. Vector Mktg. Corp.*

    No. 14-cv-0264 EMC, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015)................20, 21

*Zaborowski v. MHN Gov't Servs., Inc.*

    2013 WL 1787154 (N.D. Cal. Apr. 25, 2013) .........................................................13

**Statutes**

29 U.S.C. §§ 201, *et seq.* (Fair Labor Standards Act)........................................... passim

29 U.S.C. § 202(a)(b) ..............................................................................................10

29 U.S.C. § 206 ................................................................................................................14

29 U.S.C. § 207 ................................................................................................................14

29 U.S.C. § 207(a) ......................................................................................................14, 15

29 U.S.C. § 207(a)(1) .......................................................................................................14

29 U.S.C. § 207(g) ......................................................................................................14, 15

29 U.S.C. § 211(c) ......................................................................................................14, 15

29 U.S.C. § 215(a)(5) .......................................................................................................14

29 U.S.C. § 216(b)....................................................................................................... passim

**Other Authorities**

Daniel C. Lopez, *Collective Confusion: FLSA Collective Actions, Rule 23 Class Actions, and the Rules Enabling Act*, 61 Hastings L.J. 275, 281 (2009) ...........................................................2

The Fair Labor Standards Act 3-9 (Ellen C. Kearns et al. eds., 1999) ..............................2

**Rules**

Fed. R. Civ. P. Rule 23 .....................................................................................................19

**Regulations**

29 C.F.R. § 516.2(a)(7) .....................................................................................................14

29 C.F.R. § 531.35 ............................................................................................................15

29 C.F.R. § 785.18 ............................................................................................................14

29 C.F.R. § 785.19(a) .......................................................................................................14

29 C.F.R. § 790.21(b)(2)(ii) .............................................................................................19

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.*, Case No. 3:19-cv-01484-WHA

## I.   INTRODUCTION

In this minimum wage and overtime case brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), Plaintiff Paul Monplaisir ("Plaintiff") seeks Court-facilitated notice to potential collective action members under 29 U.S.C. § 216(b). Specifically, Plaintiff seeks to notify:

> All current and former non-exempt hourly employees of Defendants Integrated Tech Group, LLC and ITG Communications LLC working as technicians throughout the United States during the time period three years prior to the filing of the complaint until resolution of this action ("Collective" or "Technicians").

Defendants Integrated Tech Group, LLC and ITG Communications LLC (collectively "ITG") are nationwide providers of cable and communications installation services. ITG services major Cable and Communication providers throughout the country. ITG ensures high standards of timeliness, speed, and customer service to protect their client's interests. To meet these standards, ITG hires hourly Technicians like Plaintiff to perform cable, telephone, and internet installation services. By necessity, ITG cannot provide these services without subjecting all Technicians to the same common compensation practices and policies.

Plaintiff's First Amended Collective and Class Action Complaint alleges that ITG eschewed its obligations under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), by denying them and other "similarly situated" Technicians their non-waivable rights to overtime and minimum wage. Specifically, as outlined in the pleadings and declarations, Plaintiff specifically alleges that ITG: (1) pressures Technicians to underreport the amount of time worked, instructs Technicians to alter their time cards to underreport their hours, and manipulates time cards to decrease the amount of reported hours worked; (2) deletes piece-rate codes submitted by Technicians, even when the task was completed; (3) changes code entries for piece-rates to lower-paying piece-rates; (4) requires Technicians to deduct a thirty-minute meal period from their hours, even when ITG knows the Technicians do not, and by virtue of their grueling schedules could not, take a meal period; and (5) requires Technicians to incur significant expenses for ITG's sole benefit that reduces Technicians' minimum and overtime wages. ITG further fails to maintain proper time records of

such work, thereby violating FLSA record-keeping requirements.  These violations occur across ITG's business – regardless of geographic region, state, or specific location within the state.

Under the FLSA, individuals may bring collective actions on behalf of all others "similarly situated." 29 U.S.C. § 216(b).  The FLSA is a remedial statute that uses a two-stage certification process designed to facilitate notice to proposed members of employee collectives so that they may decide at an early stage whether they would like to adjudicate their claims as part of a collective.

Plaintiff easily meets the lenient standard used to determine if notice is appropriate to inform potential Opt-In Plaintiffs of their rights.  The detailed allegations in the Complaint and the declarations from Technicians who worked in nearly a dozen different locations across four different states and who have all described ITG's common violations of the FLSA.  This is all that is required at this stage.

This case is ideally suited for collective action.  It involves modest hourly wage earners who do not have the means to individually challenge their employer's compensation policies.  ITG's Technicians are the kind of workers that the FLSA was designed to protect.[1]  To date, over fifty potential Opt-In Plaintiffs who worked in nearly one dozen different ITG locations across eight different states have already submitted consent forms to join the lawsuit.  Hundreds of other employees are likely eligible to join this Collective action.  These hundreds of other employees, like the proposed Collective members, are similarly situated because they all: (1) are subject to the same illegal compensation and overtime policies regardless of geographic location that violate the FLSA, and (2) have the same job duties, responsibilities, work hours, and compensation.

Because there are many other Technicians who may not be aware of this lawsuit or their right to proceed in this forum, Plaintiff respectfully requests that the Court conditionally certify the proposed Collective and direct notice to be sent to the proposed Collective members.

---

[1] *See* DANIEL C. LOPEZ, *Collective Confusion: FLSA Collective Actions, Rule 23 Class Actions, and the Rules Enabling Act*, 61 HASTINGS L.J. 275, 281 (2009) (citing The Fair Labor Standards Act 3-9 (Ellen C. Kearns et al. eds., 1999) and H.R. Rep. No. 75-2182, at 6 (1937)) ("It was believed that a nationwide statutory floor was needed to ensure humane working conditions for workers on the lowest rung of the socio-economic ladder and that state laws would be toothless without this federal floor.  Large employers would suppress wages, lower the price of their goods, and ultimately find a market for those cheap goods in states that attempted to maintain high labor standards.")).

## II.     FACTUAL BACKGROUND

### A.     ITG Employs Non-Exempt Technicians Across the Country Who Are Subject to Similar Policies and Procedures

ITG is a national fulfillment contractor providing cable and communication equipment installations on behalf of cable operators throughout the United States.[2]  To carry out its installation services, ITG employs "Technicians" – who are classified as non-exempt employees.[3]

Plaintiff worked as a Technician for ITG between 2017 and 2018.[4]  Plaintiff and other Technicians' duties include, but are not limited to: driving to customer locations; installing cable, telephone, and internet service; making repairs; troubleshooting; and educating customers.[5]

Prior to working as ITG Technicians, Plaintiff and other Technicians are required to attend an orientation session and field training.  Technicians first attend a day-long, mandatory orientation session in order to familiarize Technicians to ITG's policies and practices.[6]  Technicians then accompany an experienced ITG Technician for one to four weeks in order to learn the job

---

[2] *See* Dkt. No. 39, First Amended Collective and Class Action Complaint ("Pl.'s Compl."), ¶ 24; *see also* ITG homepage, located at https://i-t-g.net/ (noting "MULTIPLE SERVICE LOCATIONS NATIONWIDE" in California, Oklahoma, Texas, Alabama, Florida, Tennessee, South Carolina, Pennsylvania, New York, and Connecticut) (last accessed May 21, 2019).

[3] *See* Pl.'s Compl., ¶¶ 2, 25.

[4] *See* Pl.'s Compl., ¶ 17; Declaration of Paul Monplaisir ("Monplaisir Decl.") ¶3.

[5] *See* Pl.'s Compl., ¶ 26; Monplaisir Decl. ¶5; Declaration of John Cason ("Cason Decl.") ¶5; Declaration of Marcus Byrdie ("Byrdie Decl.") ¶5; Declaration of Sterling Francois ("Francois Decl.") ¶5; Declaration of Joel Gauthier ("Gauthier Decl.") ¶5; Declaration of Robenson Jean Pierre ("Jean Pierre Decl.") ¶5; Declaration of Raphael Parris ("Parris Decl.") ¶5; Declaration of Jacky Charles ("Charles Decl.") ¶5; Declaration of Eliezer Vermeille ("Vermeille Decl.") ¶5.  Plaintiff and other Technicians are former employees of Defendant. For ease of reading, all facts are presented in the present tense for Plaintiff and other Technicians.

[6] *See* Pl.'s Compl., ¶¶ 27-28; Monplaisir Decl. ¶25; Cason Decl. ¶25; Byrdie Decl. ¶24; Francois Decl. ¶24; Gauthier Decl. ¶25; Jean Pierre Decl. ¶24; Parris Decl. ¶25; Charles Decl. ¶24; Vermeille Decl. ¶25.

assignments.[7]  Technicians are not compensated for all hours worked during this orientation and field training.[8]

### B.   ITG Technicians Perform Similar Duties Regardless of Location

Technicians are required to report to ITG's warehouse on a daily basis.[9]  At the warehouse, Technicians gather equipment they will need for the day.[10]  Technicians must wait in line with the other Technicians to gather this equipment.[11]  This pre-shift work is not recorded.[12]  Approximately once per week, Technicians are required to report to the warehouse even earlier so that ITG could perform inventory check-ins.[13]  This pre-shift work was also not recorded.[14]

At least once a week, Technicians are also required to attend a mandatory, weekly performance meeting at the warehouse for thirty minutes to one hour.[15]  During this time, ITG reviews Technicians' installations and productivity – for example, their performance the previous

---

[7] *See* Pl.'s Compl., ¶¶ 27-28; Monplaisir Decl. ¶26; Cason Decl. ¶26; Byrdie Decl. ¶25; Francois Decl. ¶25; Gauthier Decl. ¶26; Jean Pierre Decl. ¶25; Parris Decl. ¶26; *see also* Charles Decl. ¶¶25-26; Vermeille Decl. ¶26.

[8] *See* Pl.'s Compl., ¶ 27; Monplaisir Decl. ¶26; Cason Decl. ¶¶25-26; Byrdie Decl. ¶¶24-25; Francois Decl. ¶¶24-25; Gauthier Decl. ¶26; Jean Pierre Decl. ¶¶24-25; Parris Decl. ¶¶25-26; Charles Decl. ¶25; Vermeille Decl. ¶¶25-26.

[9] *See* Pl.'s Compl., ¶ 30; Byrdie Decl. ¶8; Francois Decl. ¶8; Gauthier Decl. ¶8; Jean Pierre Decl. ¶8; Parris Decl. ¶8; Charles Decl. ¶8; Monplaisir Decl. ¶8; Cason Decl. ¶8; Vermeille Decl. ¶8.

[10] *See* Pl.'s Compl., ¶ 30; Byrdie Decl. ¶8; Francois Decl. ¶8; Gauthier Decl. ¶8; Jean Pierre Decl. ¶8; Parris Decl. ¶8; Charles Decl. ¶8; Monplaisir Decl. ¶8; Cason Decl. ¶8; Vermeille Decl. ¶8.

[11] *See* Pl.'s Compl., ¶ 30; Byrdie Decl. ¶8; Francois Decl. ¶8; Gauthier Decl. ¶8; Jean Pierre Decl. ¶8; Parris Decl. ¶8; Charles Decl. ¶8; Monplaisir Decl. ¶8; Cason Decl. ¶8; Vermeille Decl. ¶8.

[12] *See* Pl.'s Compl., ¶ 30; Byrdie Decl. ¶8; Francois Decl. ¶8; Gauthier Decl. ¶8; Jean Pierre Decl. ¶8; Parris Decl. ¶8; Charles Decl. ¶8; Monplaisir Decl. ¶8; Cason Decl. ¶8; Vermeille Decl. ¶8.

[13] *See* Monplaisir Decl. ¶9; Cason Decl. ¶9; Byrdie Decl. ¶9; Francois Decl. ¶9; Gauthier Decl. ¶9; Jean Pierre Decl. ¶9; Parris Decl. ¶9; Charles Decl. ¶9; *see also* Vermeille Decl. ¶9.

[14] *See* Monplaisir Decl. ¶9; Cason Decl. ¶9; Byrdie Decl. ¶9; Francois Decl. ¶9; Gauthier Decl. ¶9; Jean Pierre Decl. ¶9; Parris Decl. ¶9; Charles Decl. ¶9; Vermeille Decl. ¶9.

[15] *See* Pl.'s Compl., ¶ 31; Monplaisir Decl. ¶10; Cason Decl. ¶10; Byrdie Decl. ¶10; Francois Decl. ¶10; Gauthier Decl. ¶10; Jean Pierre Decl. ¶10; Parris Decl. ¶10; Charles Decl. ¶10; Vermeille Decl. ¶10.

1   week, including how many jobs were completed, how many callbacks, and reviews from

2   customers.[16]  Technicians are not compensated for this pre-shift activity.[17]

3          Technicians receive their first job assignments for the day between 6:30 and 7:00 a.m.[18]

4   Technicians' first job of the day is typically scheduled for 8:00 a.m.[19]  Technicians are generally

5   assigned six to fifteen jobs per day.[20]  Most jobs take between one and four hours to complete,

6   however, some jobs can take an entire day.[21]  Each job involves different work and can present

7   unforeseen situations requiring additional work time.[22]

8          Regardless, ITG expects and schedules a maximum of 2 hours to complete each job.[23]

9   Oftentimes, ITG schedules more than one job during a two-hour period, forcing Technicians to run

10  behind schedule and work extra hours each day to complete all the assigned jobs – for example,

11

12

13  [16] *See* Pl.'s Compl., ¶ 31; Monplaisir Decl. ¶10; Cason Decl. ¶10; Byrdie Decl. ¶10; Francois Decl.
    ¶10; Gauthier Decl. ¶10; Jean Pierre Decl. ¶10; Parris Decl. ¶10; Charles Decl. ¶10; Vermeille Decl.
14  ¶10.

15  [17] *See* Pl.'s Compl., ¶ 31; Monplaisir Decl. ¶10; Cason Decl. ¶10; Byrdie Decl. ¶10; Francois Decl.
    ¶10; Gauthier Decl. ¶10; Jean Pierre Decl. ¶10; Parris Decl. ¶10; Charles Decl. ¶10; Vermeille Decl.
16  ¶10.

17  [18] *See* Pl.'s Compl., ¶ 29; Monplaisir Decl. ¶¶6-11; Cason Decl. ¶¶6-11; Byrdie Decl. ¶¶6-11;
    Francois Decl. ¶¶6-11; Gauthier Decl. ¶¶6-11; Jean Pierre Decl. ¶¶6-11; Parris Decl. ¶¶6-11;
18  Charles Decl. ¶¶6-11; Vermeille Decl. ¶¶6-12.

19  [19] *See* Pl.'s Compl., ¶ 32; Monplaisir Decl. ¶¶6-11; Cason Decl. ¶¶6-11; Byrdie Decl. ¶¶6-11;
    Francois Decl. ¶¶6-11; Gauthier Decl. ¶¶6-11; Jean Pierre Decl. ¶¶6-11; Parris Decl. ¶¶6-11;
20  Charles Decl. ¶¶6-11; Vermeille Decl. ¶¶6-12.

    [20] *See* Pl.'s Compl., ¶ 32; Monplaisir Decl. ¶¶6-11; Cason Decl. ¶¶6-11; Byrdie Decl. ¶¶6-11;
21  Francois Decl. ¶¶6-11; Gauthier Decl. ¶¶6-11; Jean Pierre Decl. ¶¶6-11; Parris Decl. ¶¶6-11;
    Charles Decl. ¶¶6-11; Vermeille Decl. ¶¶6-12.
22
    [21] *See* Pl.'s Compl., ¶ 34; Monplaisir Decl. ¶¶6-11; Cason Decl. ¶¶6-11; Byrdie Decl. ¶¶6-11;
23  Francois Decl. ¶¶6-11; Gauthier Decl. ¶¶6-11; Jean Pierre Decl. ¶¶6-11; Parris Decl. ¶¶6-11;
    Charles Decl. ¶¶6-11; Vermeille Decl. ¶¶6-12.
24
    [22] *See* Pl.'s Compl., ¶ 34; Monplaisir Decl. ¶¶11-15; Cason Decl. ¶¶11-15; Byrdie Decl. ¶¶11-15;
25  Francois Decl. ¶¶11-15; Gauthier Decl. ¶¶11-15; Jean Pierre Decl. ¶¶11-15; Parris Decl. ¶¶11-15;
    Charles Decl. ¶¶11-15; Vermeille Decl. ¶¶12-16.
26
    [23] *See* Pl.'s Compl., ¶ 34; Monplaisir Decl. ¶11; Cason Decl. ¶11; Byrdie Decl. ¶11; Francois Decl.
27  ¶11; Gauthier Decl. ¶11; Jean Pierre Decl. ¶11; Parris Decl. ¶11; Charles Decl. ¶11; Vermeille Decl.
    ¶12.

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.,* Case No. 3:19-cv-01484-WHA

1    Technicians are often required to assist other Technicians, yet these additional jobs completed are

2    not reflected in Technicians' pay.[24]

3            Once a Technician completes one job, they drive to their next job.[25]  These trips can take up

4    to an hour depending on traffic.[26]   ITG does not accurately capture all drive time when

5    compensating Technicians.[27] Additionally, during the course of the day, ITG often adds or removes

6    Technicians' job assignments, even after the Technicians drove to and reported to the customer's

7    home – Technicians time spent driving to these customer's home or any time waiting for the

8    assigned job to return is not recorded.[28]

9                       **C.    ITG Technicians' Work Similar Schedules Regardless of Location**

10           This work schedule requires Technicians to work long hours.  Technicians typically work

11   five to seven days per week, and ten to sixteen hours per day.[29]  A major portion of this time,

12   however, goes unreported or is outright eliminated from Technicians' compensation.   ITG

13   systematically pressures Technicians to underreport their hours, and threatens to – and in fact does

14   – unilaterally change Technician time records.[30]   Indeed, Technician supervisors instruct

15   

16   [24] *See* Pl.'s Compl., ¶ 34; Monplaisir Decl. ¶¶11-13; Cason Decl. ¶¶11-13; Byrdie Decl. ¶¶11-13; Francois Decl. ¶¶11-13; Gauthier Decl. ¶¶11-13; Jean Pierre Decl. ¶¶11-13; Parris Decl. ¶¶11-13; Charles Decl. ¶¶11-13; Vermeille Decl. ¶¶12-14.

17   [25] *See* Pl.'s Compl., ¶ 33; Monplaisir Decl. ¶15; Byrdie Decl. ¶15; Francois Decl. ¶15; Gauthier
18   Decl. ¶16; Jean Pierre Decl. ¶15; Parris Decl. ¶15; Charles Decl. ¶15; Vermeille Decl. ¶16.

     [26] *See* Pl.'s Compl., ¶ 33; Monplaisir Decl. ¶15; Byrdie Decl. ¶15; Francois Decl. ¶15; Gauthier
19   Decl. ¶16; Jean Pierre Decl. ¶15; Parris Decl. ¶15; Charles Decl. ¶15; Vermeille Decl. ¶16.

20   [27] *See* Pl.'s Compl., ¶ 33; Monplaisir Decl. ¶¶6-15, 28-29; Cason Decl. ¶¶6-15, 28-29; Byrdie Decl.
21   ¶¶6-16, 28-29; Francois Decl. ¶¶6-16, 28-29; Gauthier Decl. ¶¶6-16, 29-30; Jean Pierre Decl. ¶¶6-15, 28-29; Parris Decl. ¶¶6-15, 29-30; Charles Decl. ¶¶6-15, 28-29; Vermeille Decl. ¶¶6-16, 28-29.

22   [28] *See* Monplaisir Decl. ¶¶11-14; Cason Decl. ¶¶11-14; Byrdie Decl. ¶¶11-14; Francois Decl. ¶¶11-14; Gauthier Decl. ¶¶11-14; Jean Pierre Decl. ¶¶11-14; Parris Decl. ¶¶11-14; Charles Decl. ¶¶11-
23   14; Vermeille Decl. ¶12-15.

24   [29] *See* Pl.'s Compl., ¶¶ 5, 36-37; Monplaisir Decl. ¶17; Cason Decl. ¶17; Byrdie Decl. ¶17; Francois Decl. ¶17; Gauthier Decl. ¶18; Jean Pierre Decl. ¶17; Parris Decl. ¶17; Charles Decl. ¶17; Vermeille
25   Decl. ¶18.

26   [30] *See* Pl.'s Compl., ¶¶ 5, 38-44, 50; Monplaisir Decl. ¶¶6-15, 27-29; Cason Decl. ¶¶6-15, 27-30; Byrdie Decl. ¶¶6-16, 26-29; Francois Decl. ¶¶6-16, 26-29; Gauthier Decl. ¶¶6-16, 27-30; Jean
27   Pierre Decl. ¶¶6-15, 26-29; Parris Decl. ¶¶6-15, 27-30; Charles Decl. ¶¶6-15, 26-29; Vermeille Decl. ¶¶6-16, 27-30.

28

1  Technicians to reduce their hours, and encourage Technicians to report fewer hours than those

2  worked.[31]

3    As a natural consequence of Technicians' overwhelming workload, and ITG's constant

4  pressure to complete all daily job assignments, they are systematically denied the ability to take

5  meal breaks.[32]  ITG Supervisors encouraged Technicians to work through meal break periods.

6  However, despite the fact that Technicians continue to work during the purported meal break, ITG

7  requires Technicians to falsely document that they took a thirty-minute meal break.[33]  If Technicians

8  do not document that they took a thirty-minute meal break, ITG often alters their time sheets to

9  show a thirty-minute meal break, whether the Technician took a thirty-minute meal period or not.[34]

10  Technicians' time spent working during these thirty-minute meal periods – meal periods that rarely,

11  in fact, occur – is not recorded and results in off-the-clock work.[35]

12      **D. Technicians' Compensation Is Not Received Free and Clear**

13    Technicians' pay – undercompensated as it already is – is also not given unconditionally,

14  free and clear of unlawful kickbacks to ITG.[36]  ITG does not supply Technicians with all the tools

15

---

16  [31] *See* Pl.'s Compl., ¶¶ 5, 41, 44, 50; Monplaisir Decl. ¶¶6-15, 27-29; Cason Decl. ¶¶6-15, 27-29;
    Byrdie Decl. ¶¶6-16, 26-29; Francois Decl. ¶¶6-16, 26-29; Gauthier Decl. ¶¶6-16, 27-30; Jean
17  Pierre Decl. ¶¶6-15, 26-29; Parris Decl. ¶¶6-15, 27-30; Charles Decl. ¶¶6-15, 26-29; Vermeille
    Decl. ¶¶6-16, 27-30.

18  [32] *See* Pl.'s Compl., ¶¶ 5, 43-47; Monplaisir Decl. ¶¶18-21; Cason Decl. ¶¶18-21; Byrdie Decl.
    ¶¶18-20; Francois Decl. ¶¶18-20; Gauthier Decl. ¶¶19-21; Jean Pierre Decl. ¶¶18-20; Parris Decl.
19  ¶¶18-21; Charles Decl. ¶¶18-20; Vermeille Decl. ¶¶19-21.

20  [33] *See* Pl.'s Compl. ¶¶ 5, 43-47; Monplaisir Decl. ¶¶18-21, 27-29; Byrdie Decl. ¶¶18-20, 26-29;
    Francois Decl. ¶¶18-20, 26-29; Gauthier Decl. ¶¶19-21, 27-30; Jean Pierre Decl. ¶¶18-20, 26-29;
21  Parris Decl. ¶¶18-21, 27-30; Charles Decl. ¶¶18-20, 26-29; Vermeille Decl. ¶¶19-21, 27-30.

22  [34] *See* Pl.'s Compl. ¶¶ 5, 43-47; Monplaisir Decl. ¶¶18-21, 27-29; Cason Decl. ¶¶18-21, 27-29;
    Byrdie Decl. ¶¶18-20, 26-29; Francois Decl. ¶¶18-20, 26-29; Gauthier Decl. ¶¶19-21, 27-30; Jean
23  Pierre Decl. ¶¶18-20, 26-29; Parris Decl. ¶¶18-21, 27-30; Charles Decl. ¶¶18-20, 26-29; Vermeille
    Decl. ¶¶19-21, 27-30.

24  [35] *See* Pl.'s Compl., ¶¶ 43-47; Monplaisir Decl. ¶¶18-21, 27-29; Cason Decl. ¶¶18-21, 27-29; Byrdie
25  Decl. ¶¶18-20, 26-29; Francois Decl. ¶¶18-20, 26-29; Gauthier Decl. ¶¶19-21, 27-30; Jean Pierre
    Decl. ¶¶18-20, 26-29; Parris Decl. ¶¶18-21, 27-30; Charles Decl. ¶¶18-20, 26-29; Vermeille Decl.
26  ¶¶19-21, 27-30.

27  [36] *See* 29 C.F.R. § 531.35 (wages must be paid "free and clear" of any kickbacks, which include
    employees' purchase of tools as required by the employer to perform the employer's work).

28

necessary to complete the jobs assigned, nor does ITG reimburse the Technicians for tools and supplies purchased by the Technicians.[37]   To perform their basic job duties, Technicians purchase their own gasoline, tools and equipment, such as cellphones, drills, screwdrivers, wrenches, drill bits, clothing, gloves, and knee pads.[38]   Technicians are required to spend up to $300 in fuel expenses per week, and up to $1,000 in work-related expenses for tools and equipment per year.[39]

Alternatively, Technicians are forced to enter ITG's payment program, which allows Technicians to obtain the necessary tools and equipment to complete the jobs assigned by ITG, but takes a correlated dollar amount out of the Technicians' paycheck.[40]   ITG charges Technicians in the payment plan more for tools and supplies than if they purchase their own tools and supplies at a hardware store.[41]   ITG even charged Technicians who did not agree to participate in the payment plan and deducted from their paychecks.[42]   ITG also routinely deducts the costs of equipment from Technicians' compensation by labelling the deductions as "lost" equipment and supplies, regardless of whether they are returned.[43]

---

[37] See Pl.'s Compl., ¶ 7; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

[38] See Pl.'s Compl., ¶¶ 7-9, 52; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

[39] See Pl.'s Compl., ¶ 52; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

[40] See Pl.'s Compl., ¶ 7; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

[41] See Pl.'s Compl., ¶ 7; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

[42] See Pl.'s Compl., ¶ 7; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

[43] See Pl.'s Compl., ¶¶ 52-53; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

**E.   ITG's Technician Compensation Model Results In Systemic Wage Violations**

Under ITG's compensation structure, ITG provides Technicians with a job code for each discrete task they complete.[44]   Each job code corresponds to a dollar amount that the Technician is to be paid for completing that task.[45]   It is ITG's policy and practice to delete or alter codes that Technicians have submitted for completed job tasks, and ITG further pressures Technicians to omit completed tasks.[46]   ITG thus underpays Technicians by pressuring them to omit code entries for tasks they completed.[47]

It is also ITG's policy and practice to either underreport[48] or refuse to track Technicians' hours worked – thereby further underpaying Technicians for their hours worked – for: orientation and training;[49] pre-shift work;[50] meal periods, if any;[51] additional time, beyond two hours, spent on

---

[44] *See* Pl.'s Compl., ¶¶ 40-50; Monplaisir Decl. ¶¶27-29; Cason Decl. ¶¶27-30; Byrdie Decl. ¶¶26-29; Francois Decl. ¶¶26-29; Gauthier Decl. ¶¶27-30; Jean Pierre Decl. ¶¶26-29; Parris Decl. ¶¶27-30; Charles Decl. ¶¶26-29; Vermeille Decl. ¶¶27-30.

[45] *See* Pl.'s Compl., ¶¶ 49-50; Monplaisir Decl. ¶¶27-29; Cason Decl. ¶¶27-30; Byrdie Decl. ¶¶26-29; Francois Decl. ¶¶26-29; Gauthier Decl. ¶¶27-30; Jean Pierre Decl. ¶¶26-29; Parris Decl. ¶¶27-30; Charles Decl. ¶¶26-29; Vermeille Decl. ¶¶27-30.

[46] *See* Pl.'s Compl., ¶ 48-51; Monplaisir Decl. ¶¶27-29; Cason Decl. ¶¶27-30; Byrdie Decl. ¶¶26-29; Francois Decl. ¶¶26-29; Gauthier Decl. ¶¶27-30; Jean Pierre Decl. ¶¶26-29; Parris Decl. ¶¶27-30; Charles Decl. ¶¶26-29; Vermeille Decl. ¶¶27-30.

[47] *See* Pl.'s Compl., ¶¶ 48-56; Monplaisir Decl. ¶¶27-29; Cason Decl. ¶¶27-30; Byrdie Decl. ¶¶26-29; Francois Decl. ¶¶26-29; Gauthier Decl. ¶¶27-30; Jean Pierre Decl. ¶¶26-29; Parris Decl. ¶¶27-30; Charles Decl. ¶¶26-29; Vermeille Decl. ¶¶27-30.

[48] *See* Pl.'s Compl., ¶¶ 5, 38-42, 44, 50; Monplaisir Decl. ¶¶6-15, 27-29; Cason Decl. ¶¶6-15, 27-30; Byrdie Decl. ¶¶6-16, 26-29; Francois Decl. ¶¶6-16, 26-29; Gauthier Decl. ¶¶6-16, 27-30; Jean Pierre Decl. ¶¶6-15, 26-29; Parris Decl. ¶¶6-15, 27-30; Charles Decl. ¶¶6-15, 26-29; Vermeille Decl. ¶¶6-16, 27-30.

[49] *See* Pl.'s Compl., ¶ 27; Monplaisir Decl. ¶26; Cason Decl. ¶¶25-26; Byrdie Decl. ¶¶24-25; Francois Decl. ¶¶24-25; Gauthier Decl. ¶26; Jean Pierre Decl. ¶¶24-25; Parris Decl. ¶¶25-26; Charles Decl. ¶25; Vermeille Decl. ¶¶25-26.

[50] *See* Pl.'s Compl., ¶¶ 30-31; Monplaisir Decl. ¶¶6-15, 28-29; Cason Decl. ¶¶6-15, 29-30; Byrdie Decl. ¶¶6-16, 28-29; Francois Decl. ¶¶6-16, 28-29; Gauthier Decl. ¶¶6-16, 29-30; Jean Pierre Decl. ¶¶6-15, 28-29; Parris Decl. ¶¶6-15, 29-30; Charles Decl. ¶¶6-15, 28-29; Vermeille Decl. ¶¶6-16, 29-30.

[51] *See* Pl.'s Compl., ¶¶ 43-47; Monplaisir Decl. ¶¶18-21; Cason Decl. ¶¶18-21; Byrdie Decl. ¶¶18-20; Francois Decl. ¶¶18-20; Gauthier Decl. ¶¶19-21; Jean Pierre Decl. ¶¶18-20; Parris Decl. ¶¶18-21; Charles Decl. ¶¶18-20; Vermeille Decl. ¶¶19-21.

completing jobs;[52] and drive time to and between job assignments.[53]   Further, ITG does not reimburse Technicians for work-related expenses.[54]

Through this compensation system, Technicians are systematically denied the wages to which they are due and entitled.  As a result, Technicians are routinely denied minimum wage and overtime compensation.[55]

## III.   ARGUMENT

### A.   Legal Standard for Conditional Certification and Facilitation of Notice Under the FLSA

The FLSA is a remedial statute that permits employees to bring a collective action on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b); *Tennessee Coal Iron & R. Co., v. Muscoda Local No. 123*, 321 U.S. 590, 597-98 (1944); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1202-03 (N.D. Cal. 2013).  The FLSA's purpose is to "eliminate" unfair labor practices.   29 U.S.C. § 202(a)(b).   It prohibits "customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it" and provides employees a private right of action to recover their unpaid wages.  *Tennessee Coal Iron & R. Co.*, 321 U.S. at 602.

While the Ninth Circuit has not formally prescribed the standard for managing FLSA collective actions, it recently recognized the applicability of the "two-step approach." *Campbell v.*

---

[52] *See* Pl.'s Compl., ¶ 34; Monplaisir Decl. ¶¶6-15, 28-29; Cason Decl. ¶¶6-15, 29-30; Byrdie Decl. ¶¶6-16, 28-29; Francois Decl. ¶¶6-16, 28-29; Gauthier Decl. ¶¶6-16, 29-30; Jean Pierre Decl. ¶¶6-15, 28-29; Parris Decl. ¶¶6-15, 29-30; Charles Decl. ¶¶6-15, 28-29; Vermeille Decl. ¶¶6-16, 29-30.

[53] *See* Pl.'s Compl., ¶ 33; Monplaisir Decl. ¶¶6-15, 28-29; Byrdie Decl. ¶¶6-16, 28-29; Francois Decl. ¶¶6-16, 28-29; Gauthier Decl. ¶¶6-16, 29-30; Jean Pierre Decl. ¶¶6-15, 28-29; Parris Decl. ¶¶6-15, 29-30; Charles Decl. ¶¶6-15, 28-29; Vermeille Decl. ¶¶6-16, 29-30.

[54] *See* Pl.'s Compl., ¶¶ 7-9, 52; Monplaisir Decl. ¶¶30-34; Cason Decl. ¶¶31-35; Byrdie Decl. ¶¶30-34; Francois Decl. ¶¶30-34; Gauthier Decl. ¶¶31-35; Jean Pierre Decl. ¶¶30-34; Parris Decl. ¶¶31-35; Charles Decl. ¶¶30-34; Vermeille Decl. ¶¶31-35.

[55] *See* Pl.'s Compl., ¶¶ 48, 55-56; Monplaisir Decl. ¶¶6-15, 28-29; Cason Decl. ¶¶6-15, 29-30; Byrdie Decl. ¶¶6-16, 28-29; Francois Decl. ¶¶6-16, 28-29; Gauthier Decl. ¶¶6-16, 29-30; Jean Pierre Decl. ¶¶6-15, 28-29; Parris Decl. ¶¶6-15, 29-30; Charles Decl. ¶¶6-15, 28-29; Vermeille Decl. ¶¶6-16, 29-30.

1  *City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018); *see also Daniels v. Aeropostale W., Inc.*, 2013

2  WL 1758891, at *2 (N.D. Cal. Apr. 24, 2013) (Alsup, J.) (applying the two-step approach to FLSA

3  collective actions).  The first step in the two-tiered approach requires the Court to determine whether

4  the Plaintiff is "similarly situated" and whether notice of the action should be given to potential

5  opt-in plaintiffs.  *Daniels*, 2013 WL 1758891, at *2.  The Court's determination is "typically

6  focused on a review of the pleadings but may sometimes be supplemented by declarations or limited

7  other evidence."  *Campbell*, 903 F.3d at 1109; *see also Luethold v. Destination Am., Inc.*, 224

8  F.R.D. 462, 467 (N.D. Cal. 2004) (explaining that the Court's analysis at this early juncture is

9  "based primarily on the pleadings and any affidavits submitted by the parties").

10      The first stage of the two-step analysis – where this case is currently situated – is commonly

11  referred to as the "conditional certification" stage, where the court conditionally certifies the

12  collective, making a preliminary determination that plaintiffs are similarly situated and authorizes

13  notice to a potential class of the opportunity to opt into the suit. *See, e.g., See Guilbaud v.*

14  *Sprint/United Mgmt. Co., Inc.*, 2014 WL 10676582 at *1 (N.D. Cal. Oct. 3, 2014).  The Ninth

15  Circuit recently clarified the "similarly situated" standard: "[p]arty plaintiffs are similarly situated,

16  and may proceed in a collective, to the extent they share a similar issue of law or fact material to

17  the disposition of their FLSA claims." *Campbell*, 903 F.3d. at 1117.[56]

18      "The initial notice stage determination uses a 'lenient [standard] that typically results in

19  certification.'" *Ramirez*, 941 F. Supp. 2d at 1203 (quoting, *Lewis v. Wells Fargo & Co.*, 669 F.

20  Supp. 2d 1124, 1128 (N.D. Cal. 2009)); *see also, Guilbaud,* 2014 WL 10676582  at *1 (N.D. Cal.

21  Oct. 3, 2014) ("Although certification is not automatic, the plaintiffs' burden is nonetheless a light

22  one"); *Brown v. Permanente Med. Grp.,* 2017 WL 1536493 at *1 (N.D. Cal. Feb. 2, 2017) ("This

23  'fairly lenient standard' typically results in conditional certification being granted"); *Benedict v.*

24  *Hewlett-Packard Co.*, 2014 WL 587135, at *6-7 (N.D. Cal. 2014) (finding that the lenient standard

25

26  [56] In clarifying the "similarly situated" inquiry, the Ninth Circuit rejected the extent to which the

27  prior "ad hoc" standard contemplated a district court's assessment of "fairness and procedural considerations" when determining whether collective members were "similarly situated." *Campbell*, 903 F.3d. at 1117.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.,* Case No. 3:19-cv-01484-WHA

applied even though defendant produced "over 50,000 pages of documents and three Rule 30(b)(6) witnesses" because "discovery is not yet complete."). As the Ninth Circuit recently articulated, the required showing is "loosely akin to a plausibility standard," *Campbell*, 903 F. 3d at 1109, and the "sole consequence of a successful motion . . . is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Id*. at 1101 (quotation marks and citations omitted). Indeed, the standard is minimal because requiring a "higher evidentiary hurdle" at the first stage of certification would frustrate the purpose of the FLSA by "precluding employees who have suffered the same illegal treatment by an employer from prosecuting one action more efficiently and economically than would be possible with numerous individual claims." *Carter v. Anderson Merchandisers*, 2008 WL 2783193, at *2 (C.D. Cal. July 10, 2008).

At the second stage of the analysis, which usually occurs after the close of discovery, the party opposing certification may move to decertify the class. *Hernandez v. United Auto Credit Corp.*, 2010 WL 1337702, at *2 (N.D. Cal. Apr. 2, 2010). It is at this subsequent stage, and upon a developed record, where the Court engages in a more rigorous analysis of the "similarly situated" inquiry. *Id*.

**B.     This Case Should Be Conditionally Certified and Notice Should Be Authorized Because The Proposed Collective Is Similarly Situated**

This case is at the "lenient" first stage of conditional proceedings. "Under this lenient standard," Plaintiff merely must show that there is "some factual basis beyond the mere averments in [the] complaint for the class allegations." *Escobar v. Whiteside Const. Corp*., No. C 08-01120 WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008) (Alsup, J.) (internal citations omitted); *see also Adams v. Inter-Con Sec. Systems, Inc*, 242 F.R.D. at 536 (ND Cal. 2007) (granting conditional certification even where Defendants submitted sworn declarations contradicting the plaintiffs' declarations, which could "later negate plaintiffs' claims.").

The pleadings as well as the declarations submitted in support of conditional certification demonstrate that the proposed collective is similarly situated. "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact

material to the disposition of their FLSA claims." *Campbell*, 903 F.3d. at 111. If a plaintiff "makes a plausible showing that such a similarity exists, the district court should grant first-stage certification." *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018 WL 6727825, at *6 (N.D. Cal. Dec. 21, 2018).

In cases like this one, District Courts, including those in this District, typically exercise their discretion to permit collective actions to proceed.[57]  The Complaint, numerous declarations submitted with this motion, and the opt-in consent forms on file with the Court provide far more support than necessary for conditional certification. *See Guilbaud,* 2014 WL 10676582 at *1 (N.D. Cal. Oct. 3, 2014) (noting declarations attesting to common types of unlawful conduct is sufficient for conditional certification purposes); *Brown,* 2017 WL 1536493 at *2 (N.D. Cal. Feb. 2, 2017) (same); *Escobar*, 2008 WL 3915715, at *4 (same); *see also, Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 996 (C.D. Cal. 2008) ("The consistency of the statements in the various

---

[57] *See, e.g., Daniels v. Aeropostale W., Inc*., 2013 WL 1758891, at *3–4 (N.D. Cal. Apr. 24, 2013) (Alsup, J.) (conditionally certifying a nationwide collective of non-exempt employees based upon allegations of under calculated overtime wages); *Escobar*, 2008 WL 3915715, at *4 (conditionally certifying nationwide collective of non-exempt employees based upon allegations of uncompensated pre-shift and off-the-clock work); *Saravia v. Dynamex, Inc.,* 310 F.R.D. 412, 423 (N.D. Cal. 2015) (Alsup, J.) (conditionally certifying a California-wide collective of delivery drivers asserting FLSA claims based upon allegations of misclassification and uncompensated minimum and overtime wages); *Guilbaud, supra,*  2014 WL 10676582 (N.D. Cal. Oct. 3, 2014) (conditionally certifying a nationwide group of retail store employees asserting FLSA claims based upon allegations of uncompensated pre- and post-shift work, as well as allegations that they performed work during uncompensated meal periods); *Brown v. Permanente Med. Grp.,* 2017 WL 1536493 (N.D. Cal. Feb. 2, 2017) (conditionally certifying nationwide group of call center-based "Advice Nurses," asserting FLSA claims based upon allegations of uncompensated pre- and post-shift work, as well as allegations that they performed work during uncompensated meal periods); *Ramirez*, 941 F .Supp. 2d at 1206 (granting plaintiff's motion for conditional collective action certification); *Bonner v. SFO Shuttle Bus Co.*, No. C13–1606 THE, 2013 WL 6139758, at *5 (N.D. Cal. Nov. 21, 2013) (same); *Flores v. Velocity Exp., Inc.*, No. 12–cv–05790–JST, 2013 WL 2468362, at *8 (N.D. Cal. June 7, 2013) (same); *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1787154, at *4 (N.D. Cal. Apr. 25, 2013) (same); *Brewer v. Gen. Nutrition Corp.*, No. 11–CV–03587 YGR, 2013 WL 100195, at *6 (N.D. Cal. Jan. 7, 2013) (same); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 848 (N.D. Cal. 2010) (same); *Luque v. AT&T Corp.*, No. C 09–05885 CRB, 2010 WL 4807088, at *7 (N.D. Cal., Nov. 19, 2010) (same); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1129-30 (N.D. Cal. 2009) (same).

declarations submitted by Plaintiffs is sufficient to satisfy a modest factual showing that they were similarly situated, in that they routinely worked unpaid overtime in violation of the FLSA.").

Plaintiff's substantial allegations and the evidence before the Court plainly satisfy the standard for the first stage of conditional certification. All Technicians are similarly situated because they: (1) are subject to the same illegal compensation and overtime policies, and (2) have the same job duties, responsibilities, work hours, and compensation.

### 1.   ITG Subjects All Technicians to the Same Unlawful Compensation and Overtime Policies

ITG systematically violated, and continues to violate, the FLSA.  Sections 206 and 207 of the FLSA require that employers pay non-exempt, hourly employees overtime of at least one and one-half times the regular rate of pay for hours worked in excess of forty per week.  29 U.S.C. §§ 206, 207(a)(1).  The calculation of hours worked is not limited to hours "clocked-in" and may include pre-shift and post-shift work.  *Ramirez*, 941 F. Supp. 2d at 1201-06.  "Working time" also includes meal or rest periods, when an employee does not actually take a break but instead continues to work.  29 C.F.R. §§ 785.18, 785.19(a); *Hill*, 690 F. Supp. 2d at 1010; *Rother v. Lupenko*, 515 Fed. Appx. 672, 674 (9th Cir. 2013).  Employers are required to create and maintain accurate records of all hours worked by employees.  29 U.S.C. §§ 211(c), 215(a)(5); 29 C.F.R. § 516.2(a)(7).  An employer cannot shift this duty to employees. 29 U.S.C. § 211(c).

As discussed above, ITG requires that all Technicians work significant portions of their day off-the-clock.  Technicians attend training off-the-clock, they do pre-shift inventory work off-the-clock, they drive between client locations off-the-clock, they incur wait time at client locations off-the-clock, they work through lunch off-the-clock, and they continue work late into the evening off-the clock.  *See supra*, Section II.B.  ITG's conduct in requiring Technicians to work off-the-clock reduces the total hours factored into ITG's compensation formula, which necessarily reduces Technicians' total compensation, overtime compensation, as well as the total number of hours compensated at the required, bona fide, overtime rate.  This uniformly violates the FLSA.  *See* 29 U.S.C. § 207 (a), (g).

ITG also eliminates, reduces, or pressures Technicians to omit piece-rate codes for completed work activities.  *See supra,* Section II.B.  This reduces Technicians' total compensation and overtime compensation, because Technicians are not compensated at the bona fide regular rate, nor are they compensated at the bona fide overtime rate.  This, too, uniformly violates the FLSA.  *See* 29 U.S.C. § 207(a), (g).

In addition, because ITG requires Technicians to regularly incur a multitude of expenses for ITG's sole benefit, *see supra,* Section II.B, the regular and overtime compensation provided to Technicians is not paid unconditionally, free, and clear of deductions and/or kickbacks.  This also uniformly violates the FLSA.  *See* 29 U.S.C. § 206; 29 C.F.R. § 531.35 (wages must be paid "free and clear" of any kickbacks, which include employees' purchase of tools as required by the employer to perform the employer's work).

Finally, for all the reasons discussed above, ITG does not keep required, accurate records of all hours and piece-rates worked by Plaintiff and the Collective.  This uniformly violates the FLSA.  *See* 29 U.S.C. § 211(c).

## 2.    Technicians Have Similar Job Duties, Responsibilities, Work Hours, and Compensation

Plaintiff and Technicians have similar job responsibilities across the United States. All ITG Technicians are classified by ITG as non-exempt employees, who are therefore entitled to overtime compensation.[58]  All ITG Technicians perform various services related to the installation and repair of cable, internet, and phone services for ITG's clients.[59]  The services uniformly include installing cable, internet and telephone; troubleshooting; running new telephone lines; running coax cables for new outlets; installing ground cable; educating customers on equipment; providing customer

---

[58] *See, e.g.,* Pl.'s Compl., ¶25.

[59] *See* Monplaisir Decl. ¶5; Cason Decl. ¶5; Byrdie Decl. ¶5; Francois Decl. ¶5; Gauthier Decl. ¶5; Jean Pierre Decl. ¶5; Parris Decl. ¶5; Charles Decl. ¶5; Vermeille Decl. ¶5.

1    service; and replacing and installing drops.[60]  All declarants state that they regularly work in excess

2    of forty hours a week and are subject to a substantially similar compensation scheme.[61]

### 3.    Similar Cases Have Been Certified

4    Substantially similar cases involving FLSA claims on behalf of cable installers and piece-

5    rate workers have been certified, both within the Ninth Circuit and nationally.  For example, in *Soto*

6    *v. O.C. Communications*, the Northern District of California conditionally certified a nationwide

7    class of cable installation technicians who alleged, among other things, that the defendant did not

8    compensate technicians for pre- and post-shift work, and undercompensated technicians by

9    misclassifying performed tasks.  No. 17-cv-00251 (N.D. Cal. Aug. 31, 2017) Order (ECF 127),

10    attached as Exhibit A to the Edelstein Decl.

11    Similarly, in *Sigui v. M&M Commc'ns, Inc.*, the District of Rhode Island conditionally

12    certified a class of cable installation technicians who alleged, among other things, that defendants'

13    task-based compensation system did not pay the overtime required by the FLSA.  No. CV 14-442

14    (D.R.I. April 4, 2017) Order, attached as Exhibit B to the Edelstein Decl.  *See also Benoit v. Tri-*

15    *Wire Eng'g Sols., Inc.,* No. CV 07-30237 (D. Mass. June 4, 2008) Order and Notice (ECF 30),

16    attached as Exhibit C to the Edelstein Decl. (conditionally certifying collective action where

17    technicians installed and activated telephone, data, and broadbanding equipment, were paid piece-

18    rate (by the job) and alleged they were not paid overtime wages); *Perez v. Shucks Maine Lobster*

19    *LLC*, No. 2:15-CV-00348-JAW, 2016 WL 6304674, at *11 (D. Me. Oct. 27, 2016) (conditionally

20    certifying a collective of employees, based on plaintiff's personal observations and her

21    conversations with coworkers, who were paid on a piece-rate basis for picking lobsters, who alleged

22    they were not paid overtime wages).[62]

---

[60] *See supra,* Section II.A; Monplaisir Decl. ¶5; Cason Decl. ¶5; Byrdie Decl. ¶5; Francois Decl. ¶5; Gauthier Decl. ¶5; Jean Pierre Decl. ¶5; Parris Decl. ¶5; Charles Decl. ¶5; Vermeille Decl. ¶5.

[61] *See* Monplaisir Decl. ¶¶6-17, 27-29; Cason Decl. ¶¶ 6-17, 27-30; Byrdie Decl. ¶¶6-17, 26-29; Francois Decl. ¶¶6-17, 26-29; Gauthier Decl. ¶¶6-18, 27-30; Jean Pierre Decl. ¶¶6-17, 26-29; Parris Decl. ¶¶6-17, 27-30; Charles Decl. ¶¶6-17, 26-29; Vermeille Decl. ¶¶6-18, 27-30.

[62] *See also Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017) (affirming conditional certification of cable technicians who were forced to underreport their hours); *Beasley v. Custom*

1

2

**C.      Notice Should Issue Regardless of Whether Potential Opt-in Plaintiffs Have Signed Arbitration Agreements**

3      Plaintiff anticipates that ITG will argue that notice should not issue because potential Opt-in

4   plaintiffs have signed arbitration agreements – the Court should reject this argument outright.

5      Indeed, even where some of an action's potential plaintiffs "appear to be subject to an

6   enforceable arbitration agreement, th[e] court may not preemptively deny FLSA certification or

7   narrow the scope of the proposed collective" and instead "must first allow plaintiff to seek FLSA

8   certification and, if appropriate, order notice to be sent" to all potential FLSA collective action

9   members. *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH,

10  2018 WL 6727825, at *9 (N.D. Cal. Dec. 21, 2018).  "Only after the FLSA plaintiffs join this

11  action, may the court entertain defendants' arbitration-related motions seeking to compel opt-in

12  plaintiffs to arbitrate or to prohibit plaintiffs from proceeding collectively." *Id*.  Potential opt-in

13  plaintiffs who have all been subjected to the same wage violations should be given the opportunity

14  to decide for themselves whether they want to pursue their claims, and the timely issuance of notice

15  to them will facilitate that process.

16      That any prospective Collective members may have executed an arbitration agreement does

17  not bar the issuance of notice. As this Court has recognized, this initial conditional certification

18  stage is not appropriate for addressing such arbitration-related concerns because that inquiry goes

19  to the merits of the case.  *See, e.g.*, *Saravia v. Dynamex*, 310 F.R.D. 412, 424-25 (N.D. Cal. 2015)

20  (Alsup, J.) (finding that the presence of arbitration agreements among the proposed collective

21  should not bar conditional certification, noting that courts within the Ninth Circuit found that "the

22

23

_____

24  *Commc'ns, Inc.*, No. 5:15-CV-583-F, 2016 WL 5468255, at *5 (E.D.N.C. Sept. 28, 2016) (conditionally certifying cable installer technicians who were paid on a piece-rate compensation

25  scheme); *Williams v. Grayco Cable Servs., Inc.*, 187 F. Supp. 3d 760, 768 (S.D. Tex. 2016) (same); *Taylor v. Bear Commc'ns, LLC*, No. 4:12–CV–01261–BCW, 2013 WL 3270971, at *3 (W.D. Mo.

26  June 27, 2013) (same); *Jason v. Falcon Data Com, Inc.*, No. 09-cv-03990 (JG)(ALC), 2011 WL 2837488, at *7 (E.D.N.Y. July 18, 2011) (same); *Joiner v. Groupware Int'l, Inc.*, No. 8:09–cv–

27  1943–T–26MAP, 2010 WL 2136533, at *2 (M.D. Fla. May 27, 2010) (same).

28

1  issue of the enforceability of arbitration clauses related to the merits of the case and therefore should

2  be dealt with in phase two").

3      As discussed above, the relevant inquiry at this early procedural juncture is whether the party

4  plaintiffs "share a similar issue of law or fact material to the disposition of their FLSA claims." *See*

5  *Campbell*, 903 F. 3d at 1117. The required showing is "loosely akin to a plausibility standard," *id*.

6  at 1109, and the "sole consequence of a successful motion . . . is the sending of court-approved

7  written notice to workers who may wish to join the litigation as individuals." *Id*. at 1101 (quotation

8  marks and citations omitted).  As such, the presence of alleged agreements to arbitrate – the validity

9  and enforceability of which have yet to be examined – should have no bearing on the issuance of

10  notice to prospective collective members.  Cf. *Saravia*, 310 F.R.D. 424–25.

11      This Court has recognized additional considerations supporting the issuance of notice

12  notwithstanding the presence of alleged agreements to arbitrate – specifically, notice should issue

13  regardless of a Collective members status vis-à-vis an arbitration agreement because of the

14  possibility that the arbitration clause could be found unenforceable for some or all members of

15  collective and that "discovery could reveal a mechanism for addressing the arbitration clauses on a

16  collective-wide basis." *Id*.  This Court has observed that it would be "premature to assume that the

17  issue of arbitration will be unmanageable at this [conditional certification] phase, rather than

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.*, Case No. 3:19-cv-01484-WHA

reserving it for a motion for decertification." *Id*.[63]  As such, the Court should issue notice in this

case and reject any arguments that ITG may assert around purported agreements to arbitrate.[64]

### D.   Notice is Appropriate and Necessary to Protect Collective Members' Rights

District courts have broad discretion to allow a party asserting FLSA claims on behalf of

others to notify potential "similarly situated" plaintiffs that they may choose to "opt-in" to the suit.

*Hoffman-La Roche, Inc., v. Sperling*, 493 U.S. 165, 169 (1989).  Court-authorized notice protects

against "misleading communications" by the parties, resolves the parties' disputes regarding the

content of any notice, prevents the proliferation of multiple individual cases, assures that joinder of

additional parties is accomplished properly and efficiently, and expedites resolution of the dispute.

*Hoffman-La Roche, Inc.*, 493 U.S. at 171-72.[65]

---

[63] *See also, e.g., Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 782-83 (C.D. Ill. 2015) (rejecting argument that the fact that some class members were subject to arbitration agreements would preclude conditional certification, observing that "any issues related to opt-in plaintiffs with arbitration agreements can be addressed at step-two of the class certification process, where the number, timing, and circumstances surrounding such clauses can be most appropriately addressed after discovery is concluded"); *Deatrick v. Securitas Security Services USA, Inc.*, 2014 WL 5358723, at *3-4 (N.D. Cal. Oct. 20, 2014) (finding that "Plaintiff has met his burden to show that conditional certification is appropriate under the lenient standard applicable at this first stage" and concluding that arguments concerning dispute resolution agreements "have little to no bearing at this point in the litigation" and "[t]hese inquiries are reserved for the second stage of the certification process"); *Maddy v. General Electric Co.*, 59 F. Supp. 3d 675, 685 n.7. (D.N.J. 2014). ("That some service technicians have signed arbitration agreements does not preclude conditional certification of all service technicians across the United States."); *Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, *5 (E.D.N.Y. Sept. 24, 2012) (finding that the existence of arbitration agreements irrelevant to conditional certification); *D'Antuono v. C & G of Groton, Inc.*, 2011 WL 5878045, *4 (D. Conn. Nov. 23 2011) ("the existence of other exotic dancers' arbitration agreements is . . . immaterial to the question of class certification.").

[64] Plaintiff anticipates that ITG may cite *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) in support of an argument that notice should not issue – however, *JPMorgan* is not binding on this Court and runs counter to the Ninth Circuit's directive in *Campbell,* as persuasively articulated by Judge Hamilton in *Campanelli*, and also contravenes this Court's prior conclusions in *Saravia* – as well as those of courts across the country, as noted above – that issues of arbitration are more properly addressed at the decertification phase, *see Saravia,* 310 F.R.D. at 424–25.

[65] Unlike Rule 23 class actions, in Section 216(b) collective actions, the statute of limitations for putative class members is not automatically tolled with the commencement of the action, but rather with the filing of an opt-in consent. 29 C.F.R. §790.21(b)(2)(ii).

1    Plaintiff's proposal for Court-approved notice to the proposed Collective members is timely,

2    accurate, and informative – as required.  *Hoffman-La Roche Inc.*, 493 U.S. at 172.  The Proposed

3    Notice of Collective Action Lawsuit and Proposed Opt-in Consent Form (which are attached as

4    Exhibits D and E, respectively, to the Edelstein Decl.) provide notice of the pendency of the action

5    and opportunity to opt-in.[66]  Plaintiff's legal claims are accurately described, and proposed

6    Collective members are advised that ITG is defending the claims.  The Notice also clearly states

7    that they are not required to participate in this action.  Additionally, the Notice provides clear

8    instructions on how to opt-in, accurately states the prohibition against retaliation for participation

9    in a FLSA action, and informs proposed Collective members that this Court has not made any

10   determination regarding the merits of Plaintiff's claims.  Thus, Plaintiff requests that the Court

11   approve the Proposed Notice and Opt-In Consent Form submitted herewith for distribution to

12   proposed Collective members.

13        Early distribution of the Notice is essential.  *See, e.g., Adams*, 242 F.R.D. at 542-43.  As

14   described above, the pleadings and declarations submitted herewith demonstrate that that proposed

15   Collective members are "similarly situated" and that ITG has violated the FLSA.  Given this

16   evidence, Notice to proposed Collective members should be expedited, as delay threatens to destroy

17   their ability to seek compensation for numerous hours of work for which they were not paid.

18        In order to facilitate notice, Plaintiff requests that the Court require ITG to produce to

19   Plaintiff's counsel, within fourteen (14) days of the Court's order granting Plaintiff's Section 216(b)

20   Motion, a computer-readable database that includes the names of all proposed Collective members,

21   along with their last known mailing addresses, all email addresses, all telephone numbers, social

22   security numbers and dates of employment.  Based on this contact information, a third-party notice

23   administrator will mail, email, and text message the Court-approved Notice of Collective Action

24   Lawsuit and Opt-In Consent Form to proposed Collective members.  *See Woods v. Vector Mktg.*

25   *Corp.*, No. 14-cv-0264 EMC, 2015 WL 1198593, at \*5 (N.D. Cal. Mar. 16, 2015) (authorizing use

26

27   [66] Plaintiff has also provided a proposed short form Notice to be sent via text message.  *See* Exhibit
     F, attached to the Edelstein Declaration.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.*, Case No. 3:19-cv-01484-WHA

1    of an official case website; online opt-in form submission; email notice; publication on Facebook;

2    and an email or postcard reminder notice).[67]   In addition, the notice administrator will create and

3    maintain an official case website that allows for online submission of the opt-in form. *Id.*

4        Further, Plaintiff requests that proposed Collective members be required to return their

5    signed Opt-In Consent Forms to the notice administrator within ninety (90) days (received or

6    postmarked, or completed via an electronic signature service) after the date on which the Notice

7    and Consent Forms are mailed.  *Id.* at *7 (authorizing 90 day notice period).[68]  Plaintiff's counsel

8    will file the Consent Forms with the Court on an ongoing basis and no later than two weeks after

9    the end of this 90-day notice period.

10       In addition, Plaintiff requests that ITG be required to post a copy of the Notice in appropriate,

11   conspicuous, visible and accessible places at each of its offices or other locations in which

12   Collective Members currently work during the 90-day notice period.  "Courts routinely approve

13   requests to post notice on employee bulletin boards and in other common areas, even where

14

15   [67] *See also*, *Dudley v. TrueCoverage LLC*, 2018 WL 6431869, at *6 (C.D. Cal. Sep. 28, 2018)
     (approving notice by mail, email, and text message); *Petty v. Russell Cellular, Inc.*, No. 2:13-cv-
16   1110, 2014 WL 1308692, at *6 (S.D. Ohio Mar. 28 2014) (authorizing mail and email notice);
     *Prejean v. O'Brien's Response Mgmt., Inc.*, No. 12-cv-1045, 2013 WL 5960674, at *10 (E.D. La.
17   Nov. 6, 2013) (holding that "notice by both e-mail and first-class mail is both routine and reasonably
     calculated to accomplish the broad remedial goals of the notice provision of the FLSA."); *Phelps
18   v. MC Comm'cs, Inc.*, No. 2:11-cv-42, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) ("Email is
     an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants
19   may lack current physical mailing address information for its former employees."); *Calvillo v. Bull
     Rogers, Inc.*, 267 F. Supp. 3d 1307, 2017 WL 3172843, at *6 (D.N.M. July 25, 2017) ("Courts have
20   recognized that notice by email and text is reasonable in today's mobile society and that these
     methods of communication may offer a more reliable means of reaching an individual even if that
21   individual is away from home or has moved."); *Irvine v. Destination Wild Dunes Management,
     Inc.*, 132 F. Supp. 3d 707 (D.S.C. Sept. 14, 2015) ("The request that notice be distributed via direct
22   mail, email and text messaging appears eminently reasonable to the Court.").
23   [68] *See also, Adams,* 242 F.R.D. at 544 (authorizing 90 day notice period via mail and posting of
     notice); *Deatrick v. Securitas Security Services USA, Inc.,* 2014 WL 5358723, at *6 (N.D. Cal. Oct.
24   20, 2014) (authorizing 90 day notice period via mail, website, and posting of notice); *Gee v.
     Suntrust Mortg., Inc*., No. C–10–1509 RS, 2011 WL 722111, at *4 (N.D. Cal., Feb.18, 2011)
25   (authorizing 90 day notice period via mail); *Carter v. Anderson Merchandisers, LP*, 2008 WL
     2783193 at *6-7 (C.D. Cal. July 10, 2008) (authorizing 90 day notice period); *Fenley v. Wood Grp.
26   Mustang, Inc.*, 170 F. Supp. 3d 1063, 1076 (S. D. Ohio 2016) (authorizing 90 day mail and email
     notice program).
27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.,* Case No. 3:19-cv-01484-WHA

1   potential members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767

2   F. Supp. 2d 445, 449 (S.D.N.Y. 2011); *see also Adams,* 242 F.R.D. at 541-42 (approving posting

3   of notice at defendant's facilities with fifteen or more potential collective members).

4      Courts in this Circuit approve similar notice plans to that requested here. *Woods,* 2015 WL

5   1198593, at *7; *Adams*, 242 F.R.D. at 541-42.   In sum, Plaintiff's proposal for court-approved

6   notice to the potential opt-ins is "timely, accurate, and informative," as required. *Hoffman-LaRoche*,

7   493 U.S. at 172.  Plaintiff's proposed notice plan should accordingly be approved.

8   **IV.   CONCLUSION**

9      For the foregoing reasons, Plaintiff respectfully requests that the Court conditionally certify

10   the Collective class under Section 216(b), and authorize notice to allow potential plaintiffs to opt-

11   in to preserve their rights.

12

13   Date: June 7, 2019                Respectfully submitted,

14                                     */s/ Ori Edelstein*
                                       Carolyn H. Cottrell
15                                     Ori Edelstein
                                       Michelle S. Lim
16                                     SCHNEIDER WALLACE
                                       COTTRELL KONECKY
17                                     WOTKYNS LLP

18                                     Sarah R. Schalman-Bergen (admitted *pro hac vice*)
                                       Krysten Connon (admitted pro hac vice)
19                                     BERGER MONTAGUE PC

20                                     Attorneys for Plaintiff, the Collective,
                                       and putative Class

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.,* Case No. 3:19-cv-01484-WHA

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that I electronically filed the foregoing document with the Clerk of the Court

3   for the United States District Court, Northern District of California, by using the Court's CM/ECF

4   system on June 7, 2019.

5       I further certify that copies of the filed, foregoing document will be served upon the opposing

6   parties along with the other case initiating documents in this case.

7

8   Date: June 7, 2019                    Respectfully submitted,

9                                         */s/ Ori Edelstein*
                                          Carolyn H. Cottrell
10                                        Ori Edelstein
                                          Michelle S. Lim
11                                        SCHNEIDER WALLACE
                                          COTTRELL KONECKY
12                                        WOTKYNS LLP

13                                        Sarah R. Schalman-Bergen (admitted *pro hac vice*)
                                          Krysten Connon (admitted pro hac vice)
14                                        BERGER MONTAGUE PC

15                                        Attorneys for Plaintiff, the Collective,
                                          and putative Class
16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION AND TO
FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
*Monplaisir, et al. v. Integrated Tech Group, LLC, et al.,* Case No. 3:19-cv-01484-WHA