# EXHIBIT O

1  Carolyn Hunt Cottrell (SBN 166977)
   Ori Edelstein (SBN 268145)
2  Michelle S. Lim (SBN 315691)
   SCHNEIDER WALLACE
3  COTTRELL KONECKY
   WOTKYNS LLP
4  2000 Powell Street, Suite 1400
   Emeryville, California 94608
5  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
6  ccottrell@schneiderwallace.com
   oedelstein@schneiderwallace.com
7  mlim@schneiderwallace.com

8  Attorneys for Plaintiffs, the Collective and
9  Putative Class

10 *Additional Counsel on the following page*

11                **UNITED STATES DISTRICT COURT**
12                **NORTHERN DISTRICT OF CALIFORNIA**

13 PAUL MONPLAISIR,                         | Case No.: 3:19-cv-01484-WHA
   on behalf of himself and all others similarly
14 situated,                                | **DECLARATION OF ELIEZER VERMEILLE**
15           Plaintiff,
                                            | Judge: Hon. William Alsup
16      vs.

17 INTEGRATED TECH GROUP, LLC and
   ITG COMMUNICATIONS LLC,
18
            Defendants.
19

---

1

2  Sarah R. Schalman-Bergen (admitted *pro hac vice*)
   Krysten Connon (admitted *pro hac vice*)
3  BERGER MONTAGUE PC
   1818 Market Street, Suite 3600
4  Philadelphia, Pennsylvania 19103
5  Tel:  (215) 875-3000
   Fax:  (215) 875-4604
6  sschalman-bergen@bm.net
   kconnon@bm.net
7

8

9  Attorneys for Plaintiffs, the Collective
   and Putative Class
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

DECLARATION OF ELIEZER VERMEILLE
*Monplaisir v. Integrated Tech Group and ITG Communications*,
Case No.: 3:19-cv-01484-WHA

DocuSign Envelope ID: 3182B5D3-6D31-4A15-B76A-C3A21943F379
Case 3:19-cv-01484-WHA   Document 41-16   Filed 06/07/19   Page 4 of 10

# DECLARATION OF ELIEZER VERMEILLE

I, Eliezer Vermeille, have personal knowledge of the facts stated in this declaration and would testify to those facts if called upon to do so.

1. I am an adult resident of Miami, Florida.

2. I worked as a Technician for Integrated Tech Group, LLC and ITG Communications LLC (collectively "Defendants" or "ITG") in Florida.

3. I worked as a Technician in Florida from approximately September 2016 until June 2018. I worked as a Technician for both residential and commercial properties.

4. I worked in the Miami, Broward, and West Palm Beach, Florida branches.

5. During my time working for ITG as a Technician, I performed various services, all related to the installation and repair of cable services for ITG's client(s). The services included installing cable, Internet and telephone; troubleshooting; running new telephone lines; running coax cables for new outlets; installing ground cable; educating customers on equipment; providing customer service; and replacing and installing drops.

## EXPERIENCE WORKING AT ITG AS A FIELD TECHNICIAN

## TYPICAL WORK DAY

6. ITG required that I underreport my time, resulting in a substantial number of hours worked for which I was not compensated. ITG told me to enter that my beginning time was typically an hour and a half after I actually started working, and ITG typically required me to enter that I stopped working several hours before I actually stopped working. Specifically, Technician Supervisors instructed me to reduce my true hours worked in order to show higher production and increase my hourly rate. My Supervisors and Managers told me if I entered fewer hours, it would show higher production and increase my hourly rate. For example, my Managers of West Palm

1
DECLARATION OF ELIEZER VERMEILLE
*Monplaisir v. Integrated Tech Group and ITG Communications*,
Case No.: 3:19-cv-01484-WHA

Beach, both William Colondo and Gloyd (last name unknown); my Manager in Broward, Sam (last name unknown); my Supervisors of Miami, both Mario and Casanova (last names unknown); and my Supervisor in Broward, Chris (last name unknown) told me I was not allowed to clock in until 8:00 a.m. although I left the warehouse between 7:15 a.m. and 7:25 a.m. to head to my first job. Similarly, my Supervisors told me to clock out early and not report all drive time.

7. ITG notified me of my jobs for the day between 5:00 a.m. - 6:00 a.m. through "Tech Net," which was later replaced by "Tech 360," which are applications ITG used for managing jobs. In addition to being notified by Tech Net and later Tech 360, my Supervisors, Jean, Mario, Chris, and Casanova (last names unknown), would call me if I had not logged in by 7:00 a.m.

8. Throughout my time working as a Technician for ITG, when I went to the warehouse to pick up equipment, I arrived at the warehouse by 6:30 a.m. I loaded up my truck with equipment. I waited in line for the equipment between forty-five (45) minutes and one (1.5) hour each day. This time worked was not recorded.

9. I was also required to report to the warehouse even earlier so that ITG could perform an inventory of the equipment in my vehicle and so I could obtain additional equipment, such as modems, cable boxes, remotes, cable cords, coax cables, telephone line cubes, electrical tap, stickers, signs, nails, silicone, Ethernet cable, amplifiers, tie wrap, ground wire, DVR boxes, grounders (for aerial drops), splitters, fittings, plastic moldings and wood putty from ITG. My Supervisors instructed me not to enter the time spent during these inventory check-ins on my time sheets. As a result, I was not paid for those additional hours of work.

10. My Supervisors also required me to attend mandatory weekly meetings to discuss installations and ways to increase productivity. These meetings were typically one and one half (1.5) to two (2) hours each week. I do not believe that I was paid for attending these meetings.

11. I lived in Miami and ITG required that I worked in West Palm Beach or Fort Meyers – these commutes could take up to three hours. I was not given a hotel room or otherwise reimbursed. This drive time was not recorded and I do not believe I was paid for this drive time.

12. Typically, ITG assigned me between seven (7) and ten (10) jobs per day. ITG assigned me as many as fifteen (15) jobs in a single day. ITG limited the allotment of time for each job to a two (2) hour time frame regardless of the scope of work to be performed. Individual jobs typically took between forty-five minutes (45) and three (3) hours to complete, however, one job could take an entire day to complete.

13. There were some days I was assigned my full work load and also had to help other Technicians. ITG did not count jobs originally assigned to other Technicians toward my jobs assigned and completed per day. Therefore, in addition to the jobs assigned to me by ITG, my total jobs for the day could increase as much as two (2) to three (3) extra jobs per day. My Managers and Supervisors would call me throughout the day to help out other Technicians. I do not believe that I was paid for this time helping other Technicians.

14. During the course of the day, ITG sometimes added or removed my job assignments from Tech Net, and later Tech 360. Throughout my employment there were many times I would click on an assigned job, accept the job, enter the job location in the GPS, and drive to the customer's home. When I arrived at the job and parked the truck outside the customer's home or the commercial property, I would then sign into the job. Almost daily, ITG removed jobs from the system after I had already arrived at the customer's home and/or commercial property. I called my Supervisors to complain; however, the job rarely came back. I do not believe that I was paid for the time spent driving to the canceled job, any time waiting for it to come back, or time driving to the office or warehouse afterwards.

15.     Similarly, jobs were also taken away from me when I was in the middle of a job or had completed the job, but had not yet signed into Tech Net or Tech 360 to enter that I completed the job. I would call my Supervisors to complain, but this was rarely resolved. I do not believe that I was paid for the time spent on these jobs.

16.     After I completed a job, I would drive to the next job. The drive time between jobs often took between twenty (20) and thirty (30) minutes. I do not believe I was paid for this drive time.

17.     My day usually ended between 7:00 p.m. and 10:00 p.m. -- sometimes I worked until midnight. I would drive home after completing my last job except for approximately one to two times a month I would drive to the warehouse after my last job to return equipment and for ITG to check the status of the equipment. This usually took me approximately three (3) hours, and sometimes five (5) hours. I believe this time spent at the warehouse was not reported. I do not believe I was paid for this time.

18.     In total, I would work typically six (6) days per week, approximately sixteen (16) hours per day, and ninety-six (96) hours per week.

**MEAL BREAKS**

19.     As a Technician, I usually was not provided with full 30-minute meal periods during which I was able to be relieved of all duties. I was too busy to take meal periods because of ITG's demanding schedule. The number of jobs assigned in a given day, the amount of time jobs typically took to complete, and the pressure placed upon me by Supervisors to complete all daily assignments made it nearly impossible to take a meal break.

20.     My Managers and Supervisors did not enforce a 30-minute meal period. Instead, I was directed to work through my meal periods. Any time I took to eat would typically take place while I was driving from one job to another, and even then, I was required to have my cellular

telephone on me at all times and be available to respond to any work calls.

21. I was considered "on duty" and I generally worked through my meal breaks. I do not believe I was paid appropriately.

## REST BREAKS

22. As a Technician, I generally was not provided rest breaks. There was no particular schedule for rest periods. This was true throughout my employment with ITG.

23. My Supervisor instructed me to continue working until each job was finished. Once I would finish one job, I was instructed to move on to the next job. I was not allowed rest breaks.

24. I was considered "on duty" and do not believe I was paid appropriately.

## MANDATORY TRAINING

25. ITG required me to attend a full day, mandatory orientation session to familiarize myself to ITG's policies and practices. The orientation took a full day to complete and I do not believe I was compensated for this time.

26. ITG used me as an experienced ITG Technician to train other Technicians. I was required to train Technicians and was not paid for training Technicians.

## COMPENSATION

27. While working for ITG, I entered codes and hours through the Penguin application, which was replaced by the Fuse application, for the various job tasks I performed, and each of those codes corresponded to a specific dollar amount.

28. ITG would regularly delete codes for tasks I had completed, or change the codes to a lower paying code. Supervisors would instruct me not to enter a code at all, even though I completed the corresponding task. Supervisors told me not to enter any codes when assisting other Technicians with jobs.

29. My finalized time entries were not accurate and showed a lower number of hours than I actually worked. My time entries either omitted or underreported the actual amount of time I spent: attending orientation and training, working prior to my shifts, taking any meal break, working on jobs that took over two hours, and driving to and between jobs.

30. I did not receive accurate wage statements. My pay stubs showed several regular and overtime rates, but they did not reflect my specific tasks or jobs. My pay stubs did not include all the hours I worked, compensation for missed meal and rest periods, or all of the jobs or tasks I completed.

## BUSINESS EXPENSES

31. In order to do my job, I had to purchase tools and equipment, such as a wireless drill, drill bits, pliers, screwdriver, staple gun, nails, splitters, net gear, many types of cable, a cellular phone through ITG's payment plan, boots, and pants. ITG did not provide proper tools necessary to complete the jobs assigned. I purchased tools and supplies at a hardware store in Miami and I was not reimbursed. I spent approximately $1,500 a year on tools and supplies. I was never reimbursed for these expenses.

32. ITG has a Payment Program where ITG loans the funds for the purchase the purchase of tools needed to complete jobs assigned by ITG. I did not agree to be part of this Program because I believe that it would have been cheaper for me to go to a hardware store to purchase the tools myself. However, I believe that ITG took money out of my paycheck anyway.

33. The Penguin system showed deductions for the supplies necessary to purchase in order to complete the jobs assigned by ITG. Once ITG transitioned from using the Penguin application to the Fuse application, I was unable to see the dollar amount deductions taken out of my paycheck for tools and supplies.

34. I paid for the fuel that I needed. ITG did not supply fuel cards and I paid for fuel myself. I was not reimbursed. I spent over $200 a week on gas, sometimes over $500 a week on gas. I filled up my truck with fuel every morning and every night. I would put at least $50 of fuel in the truck every morning and at least $20 of fuel in the truck every night.

35. I believe that ITG made other deductions from my pay. For example, if a customer called back with the same service issue, or something was not working properly, I believe replacement parts were deducted. I also believe that I was charged for equipment I never lost, and damage to a customer's home that never occurred. I could see the deductions on Penguin and would complain; but these issues would not get resolved. Once ITG transitioned to Fuse, I was not able to see any deductions. I believe that ITG continued to make these deductions.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct and based upon my own personal knowledge.

Executed on this __7__ day of June, 2019.

DocuSigned by:

*Eliezer Vermeille*

Eliezer Vermeille

---

7
DECLARATION OF ELIEZER VERMEILLE
*Monplaisir v. Integrated Tech Group and ITG Communications,*
Case No.: 3:19-cv-01484-WHA