IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL MONPLAISIR, individually and on behalf of all others similarly situated,

Plaintiff,

v.

INTEGRATED TECH GROUP, LLC and ITG COMMUNICATIONS LLC,

Defendants.

No. C 19-01484 WHA

**ORDER RE MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND TO FACILITATE NOTICE AND MOTION TO COMPEL ARBITRATION**

**INTRODUCTION**

In this putative employment class action, plaintiff moves for conditional certification. Defendants move to compel arbitration. For the reasons stated below, the motion for conditional certification is **GRANTED** and the motion to compel is **HELD IN ABEYANCE**.

**STATEMENT**

Defendants Integrated Tech Group, LLC and ITG Communications LLC (collectively, "ITG") provide cable and communication equipment installations nationwide on behalf of cable operators. ITG employed technicians — who were classified as non-exempt employees — to implement its installation services (Dkt. No. 39 ¶¶ 24–25).

Plaintiff Paul Monplaisir worked as a technician for ITG from approximately January 2017 to June 2018. According to the complaint, his and other technicians' duties included, for example, driving to customer locations; installing cable, telephone, and internet service; making repairs; troubleshooting; and educating customers (*id*. ¶¶ 17, 26; Monplaisir Decl. ¶ 3).

Plaintiff alleges that ITG subjected its technicians to similar policies and procedures that required them to work significant portions of their day off-the-clock, including attending orientation and training; pre-shift work; meal periods; additional time spent on completing jobs; and drive time to client locations (Dkt. No. 41 at 9–10).

New hires, for example, allegedly had to attend a day-long orientation session to learn of ITG's policies and practices. Once they completed this orientation session, technicians had to shadow an experienced technician for one to four weeks to learn the job assignments. Technicians had to report to ITG's warehouse daily, where they had to wait in line to collect equipment needed for the day. They were also required to attend weekly mandatory performance meetings. Technicians allegedly typically worked ten to sixteen hours a day, much of which went unreported or eliminated from compensation, as ITG "systematically pressure[d] Technicians to underreport their hours," "unilaterally change[d] Technician time records," and "instruct[ed] Technicians to falsely report on their time sheets that they took a meal break," without regard to whether they did in fact took a meal break. Further, technicians allegedly incurred unreimbursed work-related expenses, such as gasoline, tools, and equipment purchases (Dkt. No. 39 ¶¶ 27, 30–31, 36–39, 41, 44, 52–53).

Under its compensation system, ITG provided technicians with a job code for each discrete task completed, which job code corresponded to a dollar amount to be paid to the technician. ITG, however, allegedly pressured technicians not to submit job codes for completed tasks and further instructed management to erase or alter job codes (*id.* ¶¶ 49–50).

Plaintiff filed the instant FLSA action in March 2019, seeking overtime and minimum wages. Plaintiff now moves under Section 216(b) of the FLSA to conditionally certify a collective action and to disseminate notice. His proposed FLSA is defined as follows (Dkt. No. 41 at 1):

> All current and former non-exempt hourly employees of Defendants Integrated Tech Group, LLC and ITG Communications LLC working as technicians throughout the United States during the time period three years prior to the filing of the complaint until resolution of this action ("Collective" or "Technicians").

Plaintiff argues that the putative collective members are similarly situated because they (1) are subject to the same compensation and overtime policies regardless of geographic location, and (2) have the same job duties, responsibilities, work hours, and compensation (*id*. at 2).

ITG opposes, arguing that (1) plaintiff has not shown he is similarly situated to other putative collective members, and (2) in the alternative, technicians who signed an arbitration agreement should be excluded from the proposed FLSA class (Dkt. No. 55 at 2). ITG also moves to compel arbitration as to those forty-six plaintiffs who have already opted in to the instant action but earlier signed an arbitration agreement (Dkt. No. 65 at 1). This order follows full briefing and oral argument.

**ANALYSIS**

The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provisions of the Act. *See* 29 U.S.C. § 216(b). "[W]orkers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). "Similarly situated" means "plaintiffs must be alike with regard to some *material* aspect of their litigation." *Id*. at 1114. "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id*. at 1115. In other words, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. at 1117.

Many district courts in our circuit have employed a two-step approach to collective actions. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466–67 (N.D. Cal. Aug. 16, 2004) (Judge Vaughn Walker); *Campbell*, 903 F.3d at 1109–10 (noting the two-step approach favorably). In the first step, plaintiffs move for preliminary certification and show that the members of the defined collective are "similarly situated" for purposes of providing notice of the action. At this early stage, the standard is "lenient" and district courts simply evaluate whether there is "some factual basis beyond the mere averments in their complaint for the class

3

allegations." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. Apr. 11, 2007) (Judge Marilyn Patel); *see also Campbell*, 903 F.3d at 1109. The second stage occurs when discovery is complete and the case is ready to be tried. The party opposing collective certification may then move for decertification. *Leuthold*, 224 F.R.D. at 467.

Here, plaintiff has met his "low burden" at this stage of showing that there is sufficient material similarity between plaintiff and the putative collective members with respect to the disposition of their FLSA claim. He supports each of the allegations in his complaint (discussed above) with declarations from himself and other technicians who worked in multiple different states, all of which describe similar FLSA violations by ITG. For example, plaintiff submitted declarations from nine technicians stating that they had similar job duties, typically worked over forty hours a week, were pressured to work during their lunch breaks, and were subjected to a similar compensation structure that led to inaccurate wage statements.

ITG complains that plaintiff provided no documentary evidence of a common policy or practice, such as an employee handbook. It cites no authority, however, for the proposition that documentary evidence is required at this stage. Rather, this lenient standard can be satisfied by declarations. *See Escobar v. Whiteside Constr. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *3–4 (N.D. Cal. Aug. 21, 2008) ("A court first decides, 'based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action.' " (quoting *Leuthold*, 224 F.R.D. at 467)); *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 851 (N.D. Cal 2016) (Judge Beth Labson Freeman) ("A handful of declarations may suffice."). The nine declarations demonstrate that technicians from various states were, for example, subjected to similar work conditions and compensation schemes. Given the lenient standard at this stage, these declarations are sufficient to indicate a nationwide common policy or practice. *See Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, at *5 (N.D. Cal. 2009) (Judge Samuel Conti) (conditionally certifying a nationwide class where plaintiff submitted declarations from employees from a single state only). That ITG submits its own declaration that merely avers that "ITG's policy is that employees work only on the clock" (*see*

Rivera Decl. ¶ 9), creates a "he-said-she-said situation" that is better left for later. *See Escobar*, 2008 WL 3915715, at *4.

ITG next argues that much of plaintiff's declarations contain inadmissible hearsay and speculation and thus should not be given any weight (Dkt. No. 55 at 2). In support, it filed in *nine* separate docket entries — amounting to nearly *eighty* pages in addition to the opposition brief — objections to each declaration in complete disregard of Civil Local Rule 7-3(a), which states that "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum" (*see* Dkt. Nos. 56–64). In light of this violation, this order will not consider the objections.

In the alternative, ITG argues that the proposed FLSA class should be limited to those technicians who did not sign arbitration agreements (Dkt. No. 55 at 3). It contends that about 1,400 of the approximately 2,680 putative collective members signed valid, identical arbitration agreements, which included a class/collective action waiver (*id*. at 1; Rivera Decl. ¶ 6; Exh. B ¶ 5). Thus those employees cannot be potential plaintiffs in the instant action and should not be sent notice, according to ITG. Plaintiff, on the other hand, stresses that district judges in this circuit generally defer ruling on the scope of a proposed FLSA based on arbitration agreements to the second step, given the lenient standard applicable here (Dkt. No. 66 at 13).

District judges within our circuit "that have addressed that issue have all found that the issue of the enforceability of arbitration clauses related to the merits of the case and therefore should be dealt with in phase two." *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 424 (N.D. Cal. Oct. 5, 2015). This order finds no persuasive reason to deviate from this approach.

ITG cites to *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019), where the Fifth Circuit recently held that district courts do not have "discretion to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding arbitration agreements." *Id*. at 504. Here, however, the validity of the arbitration agreements is part and parcel of the shape of the collective class. At this stage, all putative collective members remain potential plaintiffs. Thus to avoid putting the cart before the horse, this inquiry is best left for step two. *Gonzalez, et al. v. Diamond Resorts Int'l Mktg., Inc.*, No. C

18-00979 APG (CWH), 2019 WL 3430770, at *5 (D. Nev. July 29, 2019) (Magistrate Judge C.W. Hoffman, Jr.) (holding that the issue of enforceability of arbitration agreements should be left to step two and declining to adopt the reasoning in *In re JPMorgan*).

Moreover, a special circumstance here makes plaintiff's argument independently persuasive — namely, ITG has already moved to compel arbitration as to the plaintiffs who have already opted in (Dkt. No. 65). That motion will affect the interests of nearly 1,400 other putative collective members. If ITG wins a favorable ruling on the arbitration agreements' validity and enforceability before all putative collective members have had a chance to opt in and be heard, ITG would likely use the ruling against them, if not here, then in whatever court they sued. Thus all putative collective members should have notice and opportunity to be heard on this issue now.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for conditional certification is **GRANTED**. As discussed during the hearing on plaintiff's motion for conditional certification, ITG's motion to compel arbitration is accordingly **HELD IN ABEYANCE** pending the close of the opt-in period in order to allow all potential plaintiffs the opportunity to join the instant action. The parties shall **MEET AND CONFER** and jointly file proposed forms of the two notices (as discussed during the hearing) by **AUGUST 12 AT NOON**. The proposed notice to be sent to potential plaintiffs who signed an arbitration agreement should include the following language: "If you received this form of notice, then ITG contends that you are subject to a valid and enforceable arbitration agreement." And, by way of corollary, the proposed notice to be sent to potential plaintiffs who did *not* sign an arbitration agreement should include the following language: "If you received this form of notice, then ITG does not contend that you are subject to a valid and enforceable arbitration agreement." The parties shall also propose a date on which to hear ITG's motion to compel.

**IT IS SO ORDERED.**

Dated: August 6, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6