UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL MONPLAISIR, et al.,

    Plaintiffs,

v.

INTEGRATED TECH GROUP, LLC, et al.,

    Defendants.

No. C 19-01484 WHA

**ORDER DENYING PRELIMINARY SETTLEMENT APPROVAL**

## INTRODUCTION

In this wage and hour collective and putative class action, the parties move for conditional class certification and preliminary approval of a proposed class and collective settlement. Because the proposal unduly rewards counsel, appears detached from the merits of plaintiffs' claims, and unfairly burdens a discrete subset of plaintiffs, preliminary approval is **DENIED**.

## STATEMENT

Prior orders detail the facts of this case. Briefly, defendants Integrated Tech Group, LLC and ITG Communications LLC ("ITG") install cable and communication equipment across the nation. In March 2019, ITG's employees sued for violation of both federal and California law. The complaint alleged a slew of minimum-wage and overtime, meal and rest-break, expense-reimbursement, and wage-statement violations by ITG. An August 2019 order conditionally certified a nationwide collective under the Fair Labor Standards Act (Dkt. No. 76). An order

1    dated March 2, 2020, however, compelled many plaintiffs to arbitrate their claims and
2    appeared to cut the collective from nearly 380 members to 132 (Dkt. Nos. 167; 228 at 6).
3    Undaunted, plaintiffs moved to certify a Rule 23 class of California employees (Dkt. No. 128).

4    But a problem emerged. Despite full briefing and a hearing, the putative class size remained unknown because the parties' dueling motions targeted different groups. ITG targeted the nationwide FLSA collective for arbitration. Plaintiffs' class certification motion, however, shifted to California employees, of unknown count, potentially sidestepping the arbitration order.

Seeking clarification, a March 6 order held plaintiffs' motion in abeyance and directed discovery to determine the putative California-class size, how many putative members had been compelled to arbitrate, and how many remained free to proceed with the class (Dkt. No. 168). Before these questions could be answered, however, the parties reached a proposed settlement.

Following settlement conferences with Magistrate Judge Donna M. Ryu on February 28 and April 16, the parties attended, with the undersigned's approval, a mediation session with the experienced wage and hour mediator, Jeffrey A. Ross (not to be confused with San Francisco Superior Court's Judge Jeffrey S. Ross). Talks appeared fruitful. On July 22, the parties reached an agreement and a July 27 order paused discovery, pending a motion for preliminary approval of the proposed settlement. Counsel have now moved for preliminary approval of a settlement on behalf of the 378 member FLSA collective and the 284 member putative California class. ITG consents and does not oppose class and collective certification for the present purpose. This order follows briefing and a hearing (held telephonically due to COVID-19).

**ANALYSIS**

Our court of appeals maintains a "strong judicial policy" in favor of settlement of "complex class action litigation." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). But a class settlement must offer fair, reasonable, and adequate relief. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). Preliminary approval is appropriate if "the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (Chief Judge Vaughn Walker).

The crux of our proposed settlement is a non-reversionary $1,625,000 payment to the class and collective members. Of this, $21,500 will be set aside for the settlement administrator, $30,000 for the California Labor & Workforce Development Agency's share of the PAGA penalties, and $5,000 as a service award for named plaintiff Monplaisir. Among the 378 collective members and 284 members of the California class (46 who have already opted into the collective), each of our 616 plaintiffs would receive an average of $2,545 (FLSA collective members would average $1,325 and California members would average $3,975). For several reasons, however, this proposal fails to pass muster.

*First*, the proposal is a steal for class counsel. Class counsel have agreed not to seek more than $1,500,000 in fees, and ITG will not oppose any fee request up to $700,000 (or costs up to $150,000). Counsel characterize its fee and costs award as provided for "separately and in addition to" the payment to the class and collective (Dkt. No. 228 at 27). This just misses the reality here. ITG has agreed, effectively, to a gross settlement payment of between $2,475,000 and $3,275,000 (Dkt. No. 228-2 at ¶ 2(o)–(p)). Counsel will take between anywhere from 28% to 45% of this gross payment — an extraordinary fee given the 25% benchmark in this circuit. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (*overruled on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011)). This, before we even ask whether $1,625,000 marks an adequate portion of the class and collective's total potential recovery here.

It does not. Class counsel estimate the total potential recovery here at $10.9 million. The settlement payment to the class and collective comes to between a *23%* and *30%* percent recovery before attorney's fees, and a *15%* recovery after. Even taking the gross numbers, counsel expect our plaintiffs to leave 70% to 77% of the potential recovery on the table here,

3

yet themselves seek to make off with 28% to 45% of the total payment. In this circuit, counsel *earns* an extraordinary fee by winning an extraordinary result for their clients. They have not yet done so here and this order will not bless counsel's sweetheart deal.

*Second*, the slim recovery here seems to be based more on ITG's successful motion to compel arbitration than on a rigorous evaluation of the merits of plaintiffs' claims. ITG says it will waive enforcement of the arbitration agreements for the purposes of obtaining a single, efficient settlement here. But ITG cannot both waive arbitration for settlement purposes and then hold the arbitration agreements over the negotiations for the purposes of slashing plaintiffs' recovery. Simply, ITG wants to have it both ways, and the class and collective would pay the price.

Presumably, the parties could yet justify a future low-end proposed settlement *on the merits*. At class certification, ITG did ably contest the merits of plaintiffs' claims. For instance, one declarant explained in detail how ITG guaranteed each employee a lawful minimum wage, offered quality-incentive bonuses *above and beyond* the hourly wage, and accounted for that bonus in overtime and double-time pay. Undercutting plaintiffs' overtime claims, the same declarant described ITG's cell-phone app which tracked employee time (showing that employees *were* paid for drive-time), prompted employees to take, delay, or skip their rest and meal breaks, and awarded premium pay for skipped or missed breaks (Dkt. No. 142). While class counsel accounted for some of these defenses in determining their estimate of ITG's total liability here (Dkt. No. 228), they have not presented a rigorous analysis demonstrating how and the extent to which ITG's defenses undercut each of plaintiffs' claims such that, in counsel's good judgment, a 15% recovery for the class is fair.

*Third*, even assuming that it would be proper for the proposed settlement to represent a buyout of so many plaintiffs' arbitration agreements, the proposed settlement does not fairly address the fact that a subset of plaintiffs, free of any arbitration requirement, would be subsidizing that buyout for the rest. Just as a proposed settlement may not unfairly distinguish between plaintiffs, it may not unfairly lump different groups together. As inadequate as the proposal is for the majority of plaintiffs, it is even more so for the subset.

4

As a final note, the proposal draws out the settlement payment in installments. The parties justify this with vague assertions of ITG's financial situation. In the future, such a self-serving statement would require a sworn declaration with supporting material to be taken seriously.

**CONCLUSION**

The proposed settlement unduly rewards counsel at plaintiffs' expense, appears more a product of arbitration agreements than the merits, and unfairly burdens a discrete portion of the class and collective members. It remains conceivable that an amended proposal could be better justified. The undersigned's role, however, is not to amend the proposed settlement, but to either approve or deny it. *See Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989). Preliminary approval is **DENIED**. This order need not reach the question of conditional class certification. The parties shall please submit the requested supplemental numerosity discovery (Dkt. No. 214) by **NOVEMBER 27 AT 5:00 P.M.**

**IT IS SO ORDERED.**

Dated: November 7, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE