Carolyn Hunt Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
mlim@schneiderwallace.com

Camille Fundora Rodriguez (*pro hac vice*)
Lane L. Vines (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
crodriguez@bm.net
lvines@bm.net

*Attorneys for Plaintiff, the Collective
and Aggrieved Employees on behalf
of the State of California*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL MONPLAISIR, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INTEGRATED TECH GROUP, LLC and ITG COMMUNICATIONS LLC, <br><br> Defendants. | Case No.: 3:19-cv-01484-WHA <br><br> Judge: Honorable William Alsup <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT** <br><br> Date:         May 12, 2022 <br> Time:        8:00 a.m. <br> Courtroom:  12 (19th Floor) <br><br> Complaint Filed: March 21, 2019 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on May 12, 2022, at 8:00 a.m. in Courtroom 12, 19th Floor, before the Honorable William Alsup of the United States District Court, Northern District of California, Plaintiff Paul Monplaisir ("Plaintiff") moves the Court for approval of the Collective and Representative Action Settlement Agreement (the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell). In particular, Plaintiff moves for orders:

(1)    To grant approval of the Settlement as to the Collective as a fair and reasonable resolution of a *bona fide* dispute, pursuant to 29 U.S.C. § 216(b) and the Private Attorneys General Act of 2004 (Cal. Lab. Code 2699 et sec.);

(2)    To approve the Notice of Settlement to be sent to Settlement Collective Members (attached as **Exhibit C** to the Settlement);

(3)    To appoint and approve CPT Group, Inc. as the Settlement Administrator; and

(4)    Authorizing the Settlement Administrator to mail the approved Notice of Settlement to the Collective pursuant to the plan identified in the Settlement.

Plaintiff brings this Motion pursuant to long-established precedent requiring Court approval for Fair Labor Standards Act settlements[1] and Private Attorneys General Act settlements. The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, the Declaration of Camille Fundora Rodriguez, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Order Granting Approval of Collective and Representative Action Settlement and Proposed Judgment with Dismissal of Action with Prejudice with his moving papers.

Date: April 1, 2022                          Respectfully submitted,

*/s/ Carolyn Hunt Cottrell*

---

[1] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

Carolyn Hunt Cottrell
Ori Edelstein
Michelle S. Lim
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**


Camille Fundora Rodriguez (*pro hac vice*)
Lane L. Vines (*pro hac vice*)
**BERGER MONTAGUE PC**

*Attorneys for Plaintiff, the Collective and Aggrieved
Employees on behalf of the State of California*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

## **TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................................... 1

II.   SUMMARY OF THE LITIGATION................................................................................ 2

    A.    Plaintiff's Claims .............................................................................................. 2

    B.    Plaintiff's Motions for Conditional FLSA Certification, ITG's Motion to
        Compel Arbitration, and Rule 23 Class Certification............................................ 3

    C.    The Parties Completed Extensive Discovery....................................................... 4

    D.    Plaintiff's Initial Class and Collective Settlement and Request for Approval. ...... 5

    E.    Additional Discovery and the Court's Order on Plaintiff's Motion for Rule
        23 Class Certification ........................................................................................ 6

    F.    Settlement Conference and the Resulting Settlement............................................ 6

III.  KEY TERMS OF THE SETTLEMENT ......................................................................... 6

IV.   THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE
    RESOLUTION OF A BONA FIDE DISPUTE OVER FLSA PROVISIONS ................... 8

    A.    The Settlement Resolves a *Bona* Fide Dispute Over FLSA Provisions. ................ 8

    B.    The Proposed Settlement is a Fair and Reasonable Resolution of the
        Dispute. ........................................................................................................... 11

        1.    The Settlement falls well within the range of possible recoveries and
            the release provisions are narrowly tailored. ...............................................12

        2.    The Settlement comes after extensive litigation by experienced
            counsel and is informed by discovery, depositions, and motion
            practice.    ...............................................................................................14

        3.    The risks of continued litigation are substantial, and the result is
            excellent, given the risks facing Plaintiff at trial. ........................................15

        4.    The Settlement compares very favorably with other recent settlements
            of highly analogous claims. .......................................................................17

V.    THE SETTLEMENT IS ALSO REPRESENTS A FAIR AND REASONABLE
    RESOLUTION TO THE PAGA CLAIMS AT ISSUE .................................................... 18

    A.    The Settlement Advances the PAGA's Purpose.................................................. 18

    B.    The Settlement Provides a Fair and Reasonable Resolution for the State of
        California and the Aggrieved Employees.......................................................... 20

VI.    THE PROPOSED NOTICE PLAN IS REASONABLE AND APPROPRIATE .............. 25

VII.    CONCLUSION ............................................................................................................ 25

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alcantar v. Hobart Serv.*,
    No. EDCV 11-1600 PSG (SPx), 2018 U.S. Dist. LEXIS 221900

4

    (C.D. Cal. Aug. 13, 2018) ............................................................................................. 17

5

*Amaral v. Cintas*,
    163 Cal. App. 4th 1157 (2008)................................................................................. 21, 24

6

7

*Ambrosino v. Home Depot. U.S.A., Inc.*
    2014 U.S. Dist. LEXIS 58809 (S.D. Cal. 2014).............................................................. 10

8

*Arias v. Superior Court*,
    46 Cal. 4th 969 (2009)..................................................................................................... 18

9

10

*Baumann v. Chase Inv. Servs. Corp.*,
    747 F.3d 1117 (9th Cir. 2014) ........................................................................................ 20

11

*Bernstein v. Virgin Am., Inc.*,
    Nos. 19-15382, 20-15186, 2021 U.S. App. LEXIS 5197

12

    (9th Cir. Feb. 23, 2021) .................................................................................................. 21

13

*Brinker Rest. Corp. v. Superior Court*,
    53 Cal. 4th 1004, 139 Cal. Rptr. 3d 315 P.3d 513 (2012)................................................. 23

14

15

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945) ...................................................................................................... 11

16

17

*Campbell v. City of Los Angeles*
    903 F.3d 1090 (9th Cir. 2018) ........................................................................................ 17

18

*Clesceri v. Beach City Investigations & Protective Services, Inc.*,
    No. CV 10-3873-JST (Rzx), 2011 WL 320998

19

    (C.D. Cal. Jan. 27, 2011) ................................................................................................. 9

20

*Collins v. Sanderson Farms*
    568 F.Supp.2d 714 (E.D. La. 2008) ................................................................................ 10

21

22

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930, 935 (N.D. Cal. Apr. 7, 2016) ......................................................... 20

23

24

*Englert v. City of Merced*,
    No. 1:18-cv-01239-, 2020 U.S. Dist. LEXIS 80986

25

    (E.D. Cal. May 7, 2020) ................................................................................................. 14

26

*Fernandez v. Victoria Secret Stores, LLC*
    2008 WL 8150856 (C.D. Cal. 2008) .............................................................................. 14

27

28

iii

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.*, Case No. 3:19-cv-01484-WHA

*Flores v. ADT LLC*,
     No. 1:16-cv-0029-AWI-JLT, 2018 U.S. Dist. LEXIS 31784
     (E.D. Cal. Feb. 27, 2018)................................................................................. 17

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
     253 F. Supp. 3d 1074 (C.D. Cal. 2017)........................................................... 19

*Gonzales v. CoreCivic of Tennessee, LLC*,
     2018 WL 4388425 (E.D. Cal. Sept. 13, 2018) ............................................... 21

*Haralson v. U.S. Aviation Servs. Corp.*,
     383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................................ 21

*Harris v. Vector Marketing Corp.*,
     753 F. Supp. 2d 996, 2010 U.S. Dist. LEXIS 122126, 2010 WL 4588967
     (N.D. Cal. Nov. 5, 2010) ................................................................................... 9

*In Re Mego Fin. Corp. Sec. Litig.*,
     213 F.3d 454 (9th Cir. 2000) .......................................................................... 21

*Jordan v. NCI Group*,
     No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297
     (C.D. Cal. Jan. 5, 2018) .................................................................................. 19

*Khanna v. Inter-Con Sec. Sys.*,
     No. CIV S-09-2214 KJM GGH, 2012 U.S. Dist. LEXIS 137651
     (E.D. Cal. Sep. 24, 2012)........................................................................ 9, 10, 11

*Kudatsky v. Tyler Techs.*,
     No. C 19-07647 WHA, 2021 U.S. Dist. LEXIS 222313 (N.D. Cal. Nov. 17, 2021)........... 9

*Lindow v. United States*,
     738 F.2d 1057 (9th Cir. 1984) ........................................................................ 17

*Mireles v. Frio Foods, Inc.*,
     899 F.2d 1407 (5th Cir. 1990) ........................................................................ 16

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,
     No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268
     (N.D. Cal. May 5, 2021) .................................................................................. 21

*Morgret v. Applus Techs., Inc.*,
     No. 1:13-cv-01801-JLT, 2015 U.S. Dist. LEXIS 70654
     (E.D. Cal. May 29, 2015) ................................................................................ 18

*Morillion v. Royal Packing Co.*,
     22 Cal. 4th 575 (2000)................................................................................ 22, 23

*Rutti v. Lojack Corp.*,
     596 F.3d 1046 (9th Cir. 2010) ........................................................................ 16

iv

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

*Selk v. Pioneers Mem'l Healthcare Dist.*,
   159 F. Supp. 3d 1164 (S.D. Cal. 2016) ....................................................... 10, 11

*Slezak v. City of Palo Alto,*
   No. 16-CV-03224-LHK, 2017 U.S. Dist. LEXIS 96900
   (N.D. Cal. June 22, 2017) ........................................................................ 10, 11

*Smith v. Lux Retail N. Am., Inc.*,
   No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562
   (N.D. Cal. June 13, 2013) ................................................................................ 23

*Smith v. Rae Venter Law Group*,
   29 Cal. 4th 345 (2002) .................................................................................... 24

*Vargas v. Central Freight Lines*, No. 16-cv-00507-JLB, 2017 WL 4271893
   (S.D. Cal. Sept. 25, 2017) ............................................................................... 19

*Wesson v. Staples the Off. Superstore, LLC*,
   68 Cal. App. 5th 746, 283 Cal. Rptr. 3d 846 (2021) ......................................... 24

*White v. Starbucks Corp.*,
   497 F. Supp. 2d 1080 (N.D. Cal. 2007) ............................................................ 23

**Statutes**

29 U.S.C. § 202 ......................................................................................................... 12

29 U.S.C. § 216(b) ....................................................................................................... 7

29 U.S.C. § 260 ......................................................................................................... 13

Labor Code § 203 ...................................................................................................... 24

Labor Code § 2699(1)(2) ........................................................................................... 19

**Other Authorities**

Newberg on Class Actions (4th ed. 2002) .................................................................. 14

**Rules**

8 C.C.R. 13520 .......................................................................................................... 24

**Regulations**

Stats. 2003 ch. 906, § l(b) ......................................................................................... 18

## I.    **INTRODUCTION**

Plaintiff Paul Monplaisir ("Plaintiff") seeks approval of a $1,350,000 non-reversionary, collective and representative action settlement to resolve hotly contested wage and hour claims brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the Private Attorneys General Act of 2004, California Labor Code §§ 2699, *et seq.* ("PAGA").  The claims are brought by current and former non-exempt hourly employees who install cable television, phone, security, and internet services ("Technicians") for Defendants Integrated Tech Group, LLC and ITG Communications LLC (collectively, "ITG").

After nearly three years of hard-fought litigation—which included Plaintiff's motion for conditional certification of the action, dissemination of notice to prospective collective members, ITG's motion to compel arbitration and attendant supplemental briefing, Plaintiff's motion for class certification and attendant supplemental briefings, substantial deposition and documentary discovery, multiple hearings before the Court concerning discovery disputes and motions, culminating in a settlement conference before Magistrate Judge Donna M. Ryu (N.D. Cal.) and arm's-length negotiations by the Parties—the Parties have reached a settlement of this action, memorialized in the Collective and Representative Action Settlement Agreement ("Settlement").[1] Plaintiff now seeks approval of the Settlement as to the Collective and as to the PAGA representative group.

As defined in the Settlement, the Parties have resolved the claims of approximately 133 Settlement Collective Members and 238 Aggrieved Employees under the FLSA and the PAGA. The resulting Settlement is both reasonable and superior to the benchmark of comparable cases. Even after subtracting the settlement administrative costs, proposed attorneys' fees and costs, and modest service award that Plaintiff seeks from the $1,350,000 common settlement fund, the average net recovery is over $7,041 per Collective Member (approximately $163 per workweek) – representing approximately 93% of the average total exposure per Opt-In Plaintiff – and approximately $42 per Aggrieved Employee.  The proposed recovery represents an average

---

[1] The Settlement is attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell in Support of Plaintiff's Motion for Approval of Collective and Representative Action Settlement ("Cottrell Decl.").

recovery far greater than the recovery achieved in recently approved settlements resolving analogous claims for unpaid off-the-clock work and noncompliant meal and rest breaks.

The proposed recovery is particularly strong given the risks of decertification of the Collective and the meticulously limited releases under the FLSA and the PAGA, as well as the lack of binding appellate precedent on the controlling issues, the resulting appellate risk, general litigation risks, and the other delays and risks of protracted litigation.

The Settlement is excellent given these considerations.  It reflects Plaintiff's extensive efforts and achievements in this case, including methodical discovery, and intensive motion practice.  It also has procedural provisions to safeguard the Collective recovery.  For example, Collective Members will not need to submit claim forms, but rather will automatically be sent their settlement payments once the settlement is approved.  Moreover, the Settlement further provides for an email campaign and address verification process to best ensure that settlement checks are sent to each Collective Member's and Aggrieved Employee's most up to date address.  Moreover, additional address searches are to be performed for any Technician whose check is returned as undeliverable.

To the extent there remains any residual of uncashed checks after the generous 180-day check cashing deadline, none of it will revert back to ITG.  Instead, the Settlement provides that any residue remaining after the 180-day check cashing period will either revert to the Opt-In Plaintiffs who cashed their checks or be paid to the designated *cy pres* recipient, Florida Legal Services, a legal aid clinic that is dedicated to supporting the legal needs of vulnerable populations including low-wage earners in the state of Florida, the state wherein the majority of Collective Members worked.

The Settlement is an excellent result for the Collective and the State of California and easily satisfies the standard for approval under the FLSA and the PAGA. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiff respectfully requests that the Court grant the motion for settlement approval presented herein.

## II.    SUMMARY OF THE LITIGATION

### A.  Plaintiff's Claims

Plaintiff Paul Monplaisir initiated this Action on March 21, 2019, ECF No. 1, and filed the

operative First Amended Collective and Class Action Complaint ("FAC") on June 5, 2019.[2] ECF No. 39. In the FAC, Plaintiff alleges twelve causes of action under the FLSA and the California Labor Code, including the PAGA, the Industrial Welfare Commission Wage Orders, and the Unfair Business Practices Act, California Business and Professions Code §§ 17200, *et seq. Id.*

ITG is a contractor for cable and equipment installations on behalf of cable operators throughout the United States. *Id.*, ¶ 24. Plaintiff alleges that ITG employs Technicians to carry out installation services, and classifies them as non-exempt employees. *Id.*, ¶ 25. Technicians perform these services throughout the United States, including in California. *Id.*

Plaintiff alleges that ITG Technicians work long hours, typically five to seven days per week, and upwards of ten hours per day, and experienced wage and hour violations under the FLSA and California labor law. *Id.*, ¶ 5. Plaintiff asserts the first cause of action under the FLSA on behalf of himself and the Collective for ITG's alleged failure to compensate Technicians for all hours worked, including failure to pay straight time and the legally mandated overtime premium for such work, failure to pay minimum wage for all hours worked, failing to keep accurate records of all hours worked, and maintaining a company-wide policy on these timekeeping practices that violated the FLSA. *Id.,* ¶¶ 60-66, 77-86. While the FAC includes an additional eleven causes of action under California law on behalf of himself and the California class, only the tenth and eleventh causes of action for penalties pursuant to § 2699(a) and (f) of the PAGA for violations of the California Labor Code are at issue in this litigation following the Court's denial of class certification. *See id.,* ¶¶ 168-187*; see also* ECF No. 254. ITG answered the FAC on June 26, 2019. ECF No. 54.

ITG has at all times denied, and continues to deny, all of Plaintiff's allegations, and denies liability for Plaintiff's claims. Cottrell Decl., ¶ 10. ITG further denies that Plaintiff's allegations are appropriate for collective and/or representative treatment for any purpose other than for settlement purposes only. *Id.*

**B. Plaintiff's Motions for Conditional FLSA Certification, ITG's Motion to Compel Arbitration, and Rule 23 Class Certification**

---

[2] Plaintiff further submitted his notice of penalties under the PAGA to the Labor and Workforce Development Agency ("LWDA"), and included PAGA claims in this action as the LWDA did not issue a response. Cottrell Decl., ¶¶ 99-100, Ex. 3.

On August 6, 2019, the Court conditionally certified this case as a collective action and allowed the dissemination of notice to Technicians.[3] ECF No. 76. As a result of the ensuing FLSA notice process, a total of 381 Technicians filed consents to opt-in to the Action, three of whom later withdrew their consents for a total of 378 Opt-In Plaintiffs remaining in the Action. *See* ECF Nos. 6-7, 10, 13-14, 21-22, 25-26, 28, 30, 40, 47-48, 68, 83, 86-98, 102, 106-109, 111, 113, 118, 122, 124-127, 129-135, 139, 141, 144, 147, 154-155, 159, 165, 175, 212.

On March 2, 2020, the Court granted ITG's Motion to Compel Arbitration. In doing so, the Court stayed Plaintiff's PAGA claims, pending resolution of the arbitration proceedings. ECF Nos. 167, 186.  Those Collective Members who were not compelled to arbitration along with the putative class claims remained at issue after the Court's ruling. *Id.* The FLSA claims of a total of approximately 133 Opt-In Plaintiffs remained at issue (*i.e.*, were not compelled to arbitration) following the Court's ruling.[4] Cottrell Decl., ¶ 12.

### C. The Parties Completed Extensive Discovery.

The Parties engaged in extensive discovery throughout this litigation, including the production and exchange of voluminous data and documents, individualized written discovery responses served on over 100 opt-in plaintiffs, issuance of third-party subpoenas, and coordinating the scheduling of over 60 combined depositions. *Id.*, ¶ 13. Throughout this litigation, Plaintiff propounded upwards of 100 requests for production of documents on each of the ITG entities, as well as numerous special interrogatories and requests for admission. *Id.*, ¶ 14. ITG produced over 10,000 pages of documents, which Plaintiff has extensively analyzed. *Id.*, ¶ 15.[5]

Plaintiff took depositions of four of ITG's corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6), as well as other ITG witnesses, some of which spanned multiple days. *Id.*, ¶¶ 16-18.

---

[3] The Court's order allowed the dissemination of FLSA notice to a collective defined as "[a]ll current and former non-exempt hourly employees of Defendants Integrated Tech Group, LLC and ITG Communications LLC working as technicians throughout the United States during the time period three years prior to the filing of the complaint until resolution of this action." ECF No. 76, at 2.

[4] Of the 378 Opt-In Plaintiffs, 245 had signed arbitration agreements and had their claims compelled to arbitration.  Only 133 Opt-In Plaintiffs were not compelled to arbitration and their claims remained before the Court. Cottrell Decl., ¶ 12, n. 2.

[5] These documents included policies and procedures regarding how work should be completed, timekeeping, overtime, compensation, and meal and rest breaks. ITG also produced timecards, payroll documents, GPS records, and personnel files. Cottrell Decl., ¶ 15.

Plaintiff was in the process of negotiating the scheduling of over 35 depositions of other third party and/or ITG witnesses when the Parties reached their first agreement to settle the case. *Id.*, ¶¶ 19. Plaintiff's Counsel also conducted extensive interviews with numerous Opt-In Plaintiffs, responded to written discovery requests propounded on over 100 Opt-In Plaintiffs, and also submitted over 20 declarations throughout the course of the litigation. *Id.,* ¶¶ 20; ECF Nos. 41-8 to 41-16, 67-1 to 67-6, 128-19 to 128-28, 207-2.

Plaintiff also responded to hundreds of written discovery requests and ITG took depositions of Plaintiff Monplaisir and eight Opt-In Plaintiffs, and was in the process of negotiating the scheduling of 30 other opt-in plaintiff depositions when the first settlement was reached. Cottrell Decl.*,* ¶¶ 20-22; *see, e.g.,* ECF Nos. 199, 214. Throughout the course of discovery, Plaintiff and ITG litigated numerous discovery disputes. *See* ECF Nos. 103, 116, 171, 211, 216. The Parties also engaged in additional, targeted discovery around the numerosity of the proposed Class. *See, e.g.,* ECF Nos. 199, 214. The Parties continued to engage in productive discovery despite the series of challenges and disruptions posed by the COVID-19 pandemic. *See* Cottrell Decl., ¶¶ 25.

### D. Plaintiff's Initial Class and Collective Settlement and Request for Approval.

On June 15, 2020, the Parties participated in full-day virtual mediation session with experienced wage and hour mediator Jeffrey A. Ross, Esq.[6] Prior to the mediation, the Parties prepared detailed mediation statements, exchanged data, and performed calculations of potential damages. ECF 228-3, Declaration of Sarah Schalman-Bergen ("Schalman-Bergen Decl."), ¶ 9; *see also* Cottrell Decl., ¶ 26. Following the full-day mediation session, and with the assistance of Mr. Ross, the Parties engaged in subsequent arms' length negotiations and reached a settlement. Cottrell Decl., ¶ 26. The Parties informed the Court of their settlement, ECF No. 217, and on July 27, 2020, the Court issued an Order granting in part the Parties' stipulated extension of all deadlines to allow the Parties to move forward with their settlement. ECF No. 218.

On September 10, 2020, Plaintiff filed a motion for preliminary approval of the class and collective action settlement on behalf of a 378 member FLSA collective and 284-member putative California Class. ECF No. 228.  On November 7, 2020, the Court ultimately denied the motion for

---

[6] The Parties requested, and were granted, leave to participate in the mediation. ECF No. 201.

preliminary settlement approval. ECF No. 236.

### E. Additional Discovery and the Court's Order on Plaintiff's Motion for Rule 23 Class Certification

Given the Court's denial of preliminary approval of the initially proposed settlement, the Parties moved forward with litigation. Cottrell Decl., ¶ 28. The Court ultimately found that given the Court's order compelling arbitration of a substantial portion of the putative California class members, Plaintiff's proposed class lacked numerosity, and accordingly denied class certification on March 3, 2021. ECF No. 254.

### F. Settlement Conference and the Resulting Settlement

On April 6, 2021, the Parties remotely participated in a settlement conference before Magistrate Judge Ryu and agreed to settle all claims remaining before this Court, i.e., the PAGA claims for the State of California and Aggrieved Employees, the claims of the FLSA Collective Members who have opted in and whose claims were not compelled to arbitration (approximately 133 individuals), and Plaintiff Monplaisir's individual claims under the California Labor Code. ECF No. 265. The Parties executed a Memorandum of Understanding on May 24, 2021. Cottrell Decl., ¶ 29.

Over the next seven months, the Parties engaged in numerous, intensive negotiations at arms-length under the guidance of Magistrate Judge Ryu. *Id.*, ¶ 30. Thereafter, the Parties executed a long-form settlement agreement on January 13, 2022. *Id.*[7]

## III.  KEY TERMS OF THE SETTLEMENT

Under the Settlement, ITG will pay a Gross Settlement Amount of $1,350,000 to resolve this litigation. Settlement, ¶¶ 2.k, 18-19. This amount includes all payments to the Collective Members, the Aggrieved Employees, and the LWDA; proposed attorneys' fees and costs; proposed service award; and the costs of settlement administration, but does not include the employer's share of payroll taxes on any wage payments, which will be paid separately by ITG. *See* Cottrell Decl., ¶¶

---

[7] Following execution of the Settlement, the Parties further negotiated a separate settlement agreement as to Plaintiff Monplaisir's individual California wage and hour claims, which will be filed under seal for this Court's viewing once it is executed prior to the hearing on this Motion. Cottrell Decl., ¶ 31.

32-44. This entire amount will be disbursed pursuant to the terms of the Settlement, and <u>none</u> of it will revert to ITG.

Other key terms of the Settlement include:

- <u>Collective Members</u>: There will be a direct monetary distribution to the 133 individuals who timely submitted written consents to join this Action under 29 U.S.C. § 216(b) and whose FLSA claims have not been compelled to arbitration ("Collective Members"). Settlement, ¶¶ 2.s, 26-27, Ex. B. Members of the Collective will <u>not</u> have to file claims to receive their settlement payments. *See Id.*, ¶ 18.

- <u>Aggrieved Employees</u>: There will be a direct monetary distribution to the 238 individuals who worked as non-exempt employees for ITG in California between October 17, 2017 to January 13, 2022. *Id.*, ¶¶ 2.b, 26-27, Ex. A. Aggrieved Employees will <u>not</u> have to file claims to receive their settlement payments. *See id.*, ¶ 19.

- <u>No Reversion</u>: All settlement funds will be paid out, and none will revert to ITG. *Id.*, ¶¶ 2.k, 24.e, 26-27, 36-37.

- <u>Collective Release</u>: The collective release is limited to claims that were or could have been asserted under the FLSA or based on the factual predicates of the operative complaint. *Id.*, ¶ 18. Collective Members will be bound by the release only if they cash their settlement checks. *Id*.

- <u>PAGA Release</u>: Aggrieved Employees release any claims under the PAGA based on the factual predicates of the operative complaint between October 17, 2017 until January 13, 2022. *Id.*, ¶¶ 19-20. Aggrieved Employees will be bound by the release only if they cash their settlement checks. *Id.*, ¶ 19.

- <u>Net Settlement Amount</u>: The Net Settlement Amount is the amount that remains and that shall be paid to Collective Members and Aggrieved Employees, after the following amounts are subtracted: (1) the fees and costs of the third party administrator charged with administering the settlement; (2) any service award approved by the Court for Named Plaintiff Monplaisir, not to exceed $500; (3) payments to the California Labor and Workforce Development Agency for its share of PAGA civil penalties; and (4) any attorneys' fees and costs approved by the Court. *Id.*, ¶ 2.m.

- <u>Appointment of Administrator</u>: The parties request that CPT Group be appointed to serve as Settlement Administrator, to undertake its best efforts to ensure that the settlement checks and notice are provided to the current addresses of Collective Members, to perform the tax reporting, and to be available to respond to administrative queries. *Id.*, ¶¶ 2.q, 23-24, 26-31, 34-35-36, 40.

- <u>Notice of Settlement</u>: The Settlement Administrator will send a Notice and settlement award checks to all Collective Members and Aggrieved Employees via U.S. mail. *Id.*, ¶ 29, Ex. C (Notice of Settlement). The Settlement Administrator will re-mail undeliverable mailings to those with a forwarding address, and further conduct skip-tracing or other computer searches to ensure an updated address is found for any further re-mailings. *Id.*, ¶¶ 29-30.

- *<u>Pro Rata</u> Distribution*: Each Aggrieved Employee will receive a *pro rata* portion of the Net PAGA Amount ($10,000) based on the number of workweeks the individual worked compared to the total number of workweeks all Aggrieved Employees worked. *Id.*, ¶ 27.b. Each Collective Member will receive a *pro rata* portion of the remaining Net Settlement Amount (less the Net PAGA Amount) based on the number of workweeks the individual

worked compared to the total number of workweeks all Collective Members worked. *Id.*, ¶ 27.a.

- <u>Tax Allocation</u>: The Settlement provides that settlement awards to Collective Members will be allocated as follows: 1/3 shall be treated as wages and 2/3 shall be treated as liquidated damages, penalties, and interest. *Id.*, ¶ 31.a. Settlement awards to Aggrieved Employees shall be treated as penalties. *Id.*, ¶ 31.b.

- <u>Service Award</u>: The Settlement provides that Plaintiffs will seek a service payment to Named Plaintiff Monplaisir, of $500 (subject to Court approval) to compensate him for his time and effort in service of the Collective. *Id*., ¶ 24.a. The service payment is included in the Gross Settlement Amount. *Id.*, ¶ 2.k. The proposed service award in the amount of $500 for Mr. Monplaisir represents 0.037% of the Gross Settlement Amount. Cottrell Decl., ¶¶ 89-92.

- <u>Attorney's Fees and Costs</u>: Plaintiff's attorneys' fees and litigation expenses are included in the Gross Settlement Amount. Settlement, ¶ 2.k. The Settlement provides that ITG does not oppose a fee application of up $227,000, plus reasonable out-of-pocket costs of up to $123,000. *Id.*, ¶ 2.e. The proposed attorneys' fees of $227,000 represent 16.81% of the Gross Settlement Amount. *See* Cottrell Decl., ¶¶ 41, 93-97.[8]

- <u>Cy Pres</u>. Any funds less than $15,000 and still remaining after the 180-day check cashing period will revert to Florida Legal Services, the Parties' agreed-upon *cy pres* beneficiary. Settlement, ¶ 37. The organization bears a substantial nexus to the interests of the Collective Members because it is a legal aid clinic dedicated to supporting the legal rights of disenfranchised and low-wage earners in Florida, the state where most of the Collective Members worked. Cottrell Decl., ¶¶ 49-50. Any funds $15,000 or greater and still remaining after the 180-day check cashing period will be redistributed to Settlement Collective Members who cashed their Settlement Awards, with any settlement administration costs to be deducted from the total residual amount of uncashed checks prior to redistribution. Settlement, ¶ 37.a.

## IV.    THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE OVER FLSA PROVISIONS

### A.  The Settlement Resolves a *Bona Fide* Dispute Over FLSA Provisions.

While approval by a court or the Labor Secretary is required for FLSA collective settlements pursuant to 29 U.S.C. §216(b), the Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Most courts in this Circuit, however, first consider whether the Plaintiff is "similarly situated" to the proposed class members within the meaning of 29 U.S.C. § 216(b), and then evaluate the settlement under the standard established by the Eleventh Circuit in *Lynn's Food*

---

[8] Plaintiff intends to file a separate motion for attorneys' fees and costs and service award, which will further detail the reasonableness of Plaintiff's requests, and which will be set to be heard concurrently with this motion.

*Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Kudatsky v. Tyler Techs.*, No. C 19-07647 WHA, 2021 U.S. Dist. LEXIS 222313, at *12 (N.D. Cal. Nov. 17, 2021) (Alsup, J.) (quoting *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015)).

With respect to the first step, Plaintiff is similarly situated to the collective. Whether at conditional certification or settlement approval, "the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)." *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 2010 U.S. Dist. LEXIS 122126, 2010 WL 4588967, at *4 (N.D. Cal. Nov. 5, 2010) (Chen, J.); *Khanna v. Inter-Con Sec. Sys.*, No. CIV S-09-2214 KJM GGH, 2012 U.S. Dist. LEXIS 137651, at *10 (E.D. Cal. Sep. 24, 2012) ("standards for certifying an FLSA class and evaluating the fairness of an FLSA settlement are less stringent than those imposed by Rule 23") (citing *Clesceri v. Beach City Investigations & Protective Services, Inc.*, No. CV 10-3873-JST (Rzx), 2011 WL 320998, at *4 (C.D. Cal. Jan. 27, 2011)).

The Court has already conditionally certified a larger collective under § 216(b) for Plaintiff's FLSA claims, finding that Plaintiff and the members of the defined collective are "similarly situated" for purposes of providing notice.[9] *See* ECF No. 76. Notice was subsequently sent, and a total of 381 Technicians opted into the action. *See* Cottrell Decl., ¶ 11. ITG has not moved for decertification of these FLSA claims. *Id.*, ¶ 53*; see also Brooks v. Williams Tank Lines,* No. C 10-01404 WHA, 2011 U.S. Dist. LEXIS 51982, at *14-15 (N.D. Cal. May 13, 2011) (certifying FLSA collective for settlement purposes where Court had already approved conditional certification under first "similarly situated" analysis, defendants did not oppose collective certification for purposes of settlement, and finding that FLSA plaintiffs are similarly situated in that they performed similar

---

[9] In granting the Motion, the Court pointed out that "plaintiff submitted declarations from nine technicians stating that they had similar job duties, typically worked over forty hours a week, were pressured to work during their lunch breaks, and were subjected to a similar compensation structure that led to inaccurate wage statements" and concluded that "[t]he nine declarations demonstrate that technicians from various states were, for example, subjected to similar work conditions and compensation schemes." ECF No. 76*. See also,* Cottrell Decl., ¶¶ 51-54. Accordingly, the Court should certify the FLSA collective for settlement purposes.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

work for defendant under similar conditions).

Further, with respect to the second step, the settlement is a "reasonable compromise of a *bona fide* dispute" over wages and other FLSA issues that were the focus of the litigation and the negotiations, and that would have impacted the case moving forward. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues...that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.[10] Disputes over "FLSA coverage or computation of back wages" or over "the full extent of damages that would need to be paid under FLSA," including whether defendants had a "good faith" defense to avoid liquidated damages, satisfy the "bona fide dispute" requirement under the FLSA. *Slezak v. City of Palo Alto*, 16-CV-03224-LHK, 2017 WL 2688224, at *2-3 (N.D. Cal. June 22, 2017) (citations omitted). A bona fide dispute exists where there are "legitimate questions" regarding "the existence and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citing *Ambrosino v. Home Depot. U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 58809, (S.D. Cal. Apr. 28, 2014)). There must be "some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008).

Here, a *bona fide* dispute exists as to whether ITG's pay system violated the FLSA by (1) failing to compensate Technicians for time spent in training, conducting pre-shift inventory, driving to appointments, wait time between appointments, working through purportedly off-duty meal breaks, and work performed after clocking out; and (2) failing to capture all hours worked, including whether Technicians were pressured to underreport the amount of time worked or instructed to alter their time cards to underreport their hours.

In addition, a *bona fide* dispute exists as to (1) whether ITG's bonus compensation system, which used Technician's per unit production to calculate amounts earned, was a piece-rate system or not, and if so, whether Technicians were paid all overtime at the proper overtime rate, (2) whether

---

[10] *Accord Khanna v. Inter-Con Security Systems, Inc.,* No. 09-cv-2214 KJM GGH, 2012 U.S. Dist. LEXIS 137651, at *28 (E.D. Cal. Sept. 25, 2012).

deleting or changing piece-rates or bonus codes submitted by Technicians under ITG's bonus compensation system constitutes a violation of the FLSA, (3) whether ITG failed to provide compensation free and clear in violation of the FLSA by requiring collective members to incur substantial expenses for ITG's sole benefit, and (4) whether ITG would be able to meet its burden of demonstrating the alleged unlawful pay system was made in good faith with reasonable grounds for their belief they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid imposition of liquidated damages.

Ultimately, the proposed settlement resolves *bona fide* disputes over the FLSA provisions and represents a reasonable resolution that accounts for the risks that members of the proposed Settlement Collective would face if the case proceeded further in litigation while providing certain, substantial and immediate payment for the Technicians who are members of the Settlement Collective in this case. *See Khanna*, 2012 U.S. Dist. LEXIS 137651, at *30; Cottrell Decl., ¶ 88; Rodriguez Decl., ¶ 12.

### B. The Proposed Settlement is a Fair and Reasonable Resolution of the Dispute.

Courts that have considered FLSA only settlements look to the "totality of the circumstances" and the "purposes of FLSA" to determine whether the settlement is fair and reasonable.  In doing so, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of the proceedings and amount of discovery completed; (3) seriousness of litigation risks faced by the parties; (4) scope of any release provisions; (5) experience and views of counsel and opinions of participating plaintiffs; and (6) possibility of fraud or collusion. *Slezak v. City of Palo Alto,* No. 16-CV-03224-LHK, 2017 U.S. Dist. LEXIS 96900, at *7-8 (N.D. Cal. June 22, 2017) (citing *Selk*, 159 F. Supp. 3d at 1173).

Here, the Settlement furthers the purposes of the FLSA by providing Settlement Collective Members, Technicians who earn relatively low wages, with substantial recovery towards their alleged unpaid overtime that they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory

1    legislation to prevent private contracts on their part which endangered national health and efficiency

2    ….").

3            **1.  The Settlement falls well within the range of possible recoveries**

4            **and the release provisions are narrowly tailored.**

5          The Settlement achieved here represents an excellent result for the Collective.  Even after the

6    netting attorneys' fees, costs and service award permitted under the Settlement, as well as the

7    estimated costs of settlement administration, an estimated Net Settlement Amount of approximately

8    $946,517 would be distributed to the approximately 133 Collective Members and 238 Aggrieved

9    Employees.  This works out to approximately $7,041 per Collective Member, or about $163 per

10   workweek. Cottrell Decl., ¶¶ 58.  This is an outstanding recovery, which, as discussed in Section

11   IV.A.4, *infra*, is superior to recoveries in recent, highly analogous wage and hour settlements – both

12   FLSA settlements and class-action settlements alike – that have been approved.  This will bring

13   substantial relief to the Collective.

14         The $1.35 million all-in recovery compares favorably with Plaintiff's estimates of ITG's

15   exposure, based on the analysis prepared by Plaintiff's in-house data analyst. Schalman-Bergen

16   Decl., ¶ 9; Cottrell Decl., ¶¶ 60-64.  As one point of comparison, the $1.35 million all-in settlement

17   amount is far greater than ITG's total liquidated exposure for the FLSA claims (totaling

18   $1,010,742). *Id*., ¶ 66.  Put another way, the average recovery under the net settlement amount

19   ($7,041), excluding the amount apportioned to PAGA penalties, represents approximately 93% of

20   the calculated total FLSA exposure per Opt-In Plaintiff (*i.e.*, about $7,600). *Id*. And, even if

21   Plaintiffs were awarded full liquidated damages, interest, and further PAGA penalties per pay

22   period in addition to this amount, the $1.35 million all-in recovery would still represent

23   approximately 60% of ITG's total exposure of approximately $2,280,961 for both the FLSA and

24   PAGA claims, including liquidated damages and multiple PAGA penalties per pay period. *Id*., ¶

25   65. Moreover, even if Plaintiff was awarded full liquidated damages, interest, and further PAGA

26   penalties per pay period in addition to this amount,[11] the estimated $946,517 net settlement amount

27   still would represent approximately 42% of ITG's total exposure. *Id*.

28

---

[11] *See, infra,* Section V.B.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

These latter figures are based on Plaintiff's assessment of a best-case scenario at trial. To have obtained such a result at trial, Plaintiff would have had to prove that *all* Aggrieved Employees suffered an average of 2 to 3 California Labor Code violations each pay period and that *all* Opt-In Plaintiffs performed one hour of off-the-clock work per day and without pay. *Id.*, ¶ 68. This would have required Plaintiff to prevail on his argument that time spent by Technicians driving to the warehouse or the first job site at the beginning of the day, and back to their homes from their last job sites at the end of the day, is compensable under the FLSA and under California law – which arguably provides a stricter standard and which ITG has strongly disputed. *Id.*, ¶¶ 78-79;[12] ECF No. 236, at 4:12-19.

The path to an award of liquidated damages at trial was equally uncertain. Section 260 of the FLSA reads in relevant part that, in any civil action regarding unpaid compensation, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof." 29 U.S.C. § 260. ITG would no doubt be prepared to submit evidence showing that it had acted in good faith and on reasonable grounds that its actions were not in violation of the FLSA,[13] and this whether this Court agreed with ITG would be a risk that Plaintiff would necessarily undertake had litigation continued. Plaintiff's exposure analysis also assumes that he would prevail on his PAGA claims, the risks of which are discussed further *infra*, Section V.B. *See* Cottrell Decl., ¶ 81.

Moreover, in exchange for the proposed Settlement, Collective Members will release claims limited to the FLSA, and will only do so upon cashing their individual settlement checks.

---

[12] Plaintiff's discussion of risk is not intended to be a concession on any issue, but offered to illustrate the litigation risks they faced and the reasonableness of the Settlement they achieved. Plaintiff explicitly reserves his position on all his claims.

[13] For example, ITG presented evidence that technicians were required to review their time entries upon every clock out and verify the accuracy each day by electronically signing the timesheet and that they were the only ones who could enter and correct their time entries. ITG's proffered deposition testimony of certain technicians also stated that they had knowledge of ITG's timekeeping policies, that they were trained on the policies, that they clocked in for pre-shift and post-shift work and believed to have been paid for such accompanying overtime, and that ITG reminded them regularly to be clocked in for all work. *See generally,* ECF No. 142.

1    Settlement, ¶ 18. The narrow nature of the proposed Collective Release further indicates the

2    reasonableness of the proposed Settlement.

3        In sum, even including Plaintiff's assessment of a best-case scenario at trial, the proposed

4    Settlement falls well within the possible range of recoveries and represents an excellent result for

5    the Collective. Cottrell Decl., ¶¶ 44, 54, 58, 69 ; Rodriguez Decl., ¶¶ 13-18.

6                    **2.    The Settlement comes after extensive litigation by experienced**

7                    **counsel and is informed by discovery, depositions, and motion**

8                    **practice.**

9        The late stage of the case and amount of completed discovery allowed the Parties to fully

10    evaluate the claims and supports a finding that the Settlement should be approved. Courts consider

11    "the extent of discovery completed and the stage of the proceedings" in assessing the fairness of an

12    FLSA settlement. *Englert v. City of Merced*, No. 1:18-cv-01239-, 2020 U.S. Dist. LEXIS 80986, at

13    *6-7 (E.D. Cal. May 7, 2020) (collecting cases). Further, where a settlement is the product of arms-

14    length negotiations conducted by experienced counsel and follows sufficient discovery, the Court

15    begins its analysis with a presumption that the settlement is fair and reasonable. NEWBERG ON

16    CLASS ACTIONS, § 11.41 (4th ed. 2002); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008

17    WL 8150856, at *4 (C.D. Cal. July 21, 2008).

18        Here, the proposed Settlement was the product of informed negotiations during and

19    following a settlement conference presided over by Magistrate Judge Ryu. Cottrell Decl., ¶¶ 71-72;

20    Rodriguez Decl., ¶¶ 9-10; Settlement, ¶ 12. Although respectful, the arms-length negotiations were

21    rigorous and contested. *See* Cottrell Decl., ¶¶ 29-30, 71-72. As a result of the settlement conference,

22    the Parties reached a settlement. *Id*.

23        Furthermore, the settlement was reached after substantial discovery, depositions, and motion

24    practice. Indeed, Collective Counsel diligently litigated the Collective Members' claims and the

25    PAGA claims for nearly three years. Extensive investigation, discovery, motion practice and trial

26    preparation have allowed the Parties to assess the strengths and weaknesses of the claims, defenses,

27    and the benefits of the Settlement. *Id*., ¶¶ 11-30, 72; Rodriguez Decl., ¶ 9. For instance, Plaintiff

28    conducted numerous interviews of Collective Members to investigate the policies and practices at

issue. Cottrell Decl., ¶¶ 20-21, 72. Plaintiff submitted multiple Collective Member declarations to support the motions for conditional certification and class certification, and prepared individualized discovery responses propounded on 135 Collective Members. *See id*., ¶ 72. Plaintiff also conducted five depositions of ITG's corporate designee witnesses, another deposition on a senior officer of ITG, and defended the depositions of eight Opt-In Plaintiffs and of Plaintiff Monplaisir. *Id*., ¶¶ 16-18, 22, 72. The Parties conducted substantial written discovery and meet and confer, litigating numerous discovery disputes along the way (ECF Nos. 103, 116, 171, 211, 216) which resulted in ITG producing thousands of pages of policy and other relevant documents, as well as extensive GPS, compensation, and timekeeping data. *Id*., ¶¶ 15, 72.

Moreover, the Parties litigated, *inter alia*, Plaintiff's motion for conditional certification, Plaintiff's motion for class certification, ITG's motion to compel arbitration, Plaintiff's motion to reconsider the Court's order compelling arbitration, among other motions. *Id*., ¶¶ 11-12, 73. These and other proceedings in the case produced a thorough vetting of the factual and legal bases for Plaintiff's claims and the key defenses to those claims. *Id.*, ¶ 73.

In addition, Plaintiff's Counsel here have extensive experience litigating complex wage and hour class and collective actions. *Id*., ¶ 98; Declaration of Camille Fundora Rodriguez in Support of Motion for Approval of Collective and Representative Action Settlement ("Rodriguez Decl."), ¶¶ 2-9, 13, Ex. A. Accordingly, the fact that qualified and well-informed counsel endorse the proposed settlement as being fair, reasonable, and adequate further weighs in favor of approval.

### 3. The risks of continued litigation are substantial, and the result is excellent, given the risks facing Plaintiff at trial.

Had the Parties not reached settlement, Plaintiff faced considerable risk of continued litigation. On the merits, Plaintiff faced several risk factors. For example, Plaintiff's off-the-clock claims faced considerable factual issues, including: ITG had facially compliant written policies; ITG's data indicated that Technicians regularly clocked in pre-shift and post-shift and were required verify their time entries every time they logged into FUSE, a timekeeping application; corresponding data showed Technicians were paid for such time (including overtime); ITG had paid hundreds of meal period premiums during the claims period; ITG submitted multiple

declarations showing Technicians received all proper pay, including in relation to their meal breaks. Cottrell Decl., ¶ 76; *see also, supra,* Section IV.A.  Crucially, ITG's production of documents, Rule 30(b)(6) testimony, and deposition testimony from certain Technicians, also supported ITG's defense that some Technicians followed ITG's written policies and were paid for worked performed off-the-clock and that Technicians took the majority of their meal breaks. Cottrell Decl., ¶ 77. This latter evidence showed that Technicians were not only prompted that they should be taking their breaks at the appropriate intervals, but also could not continue using the work applications necessary to input their work until they entered preexisting or write-in responses stating whether they would or would not be taking their breaks and why. *Id.*

Similarly, ITG was poised to submit evidence – and did submit some evidence (including policy documents, timekeeping records, deposition testimony from both ITG employees and Rule 30(b)(6) deponents, and GPS records) – that, as a matter of policy and practice, Technicians were paid for drive-time. *Id.,* ¶ 78; *see also* ECF No. 142.  While Plaintiff would have presented evidence from numerous Collective Members that such drive-time was generally unpaid and off-the-clock, Plaintiff faced the risk that a jury would credit contrary evidence and preclude a finding that, at the minimum, all Collective Members did not drive off-the-clock for work for substantial amounts of time every day without proper compensation. Cottrell Decl., ¶ 78; *see also, e.g., Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010) (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1413 (5th Cir. 1990) (holding that waiting time "greater than forty-five minutes are not compensable because Plaintiffs were not required to remain on Defendant's premises during such periods and could use such periods effectively for their own purposes").

There also is the unresolved legal question of whether the jury would have been able to take into consideration whether drive-time to and from the first job site/warehouse and last job site, respectively, constitutes off-the-clock work at all under the FLSA. Cottrell Decl., ¶ 79.  Plaintiff planned to submit evidence of such instances, and maintains that such drive-time would be and should be compensable under both. *Id.* However, Parties would be required to brief that issue, and it is not clear how the jury would be instructed. *See, e.g., Rutti*, 596 F.3d at 1054 (to be entitled to compensation for off-the-clock work, activity that might otherwise be compensable is not if the

16

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

time is *de minimus* and commute time is exempt as an activity preliminary or postliminary to principal activities under 29 U.S.C. § 254(a)(2)); *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (finding "the 7 to 8 minutes spent by employees reading the log book and exchanging information, even if not preliminary, *was de minimis* and therefore not compensable.").

Plaintiff further faced the risk of decertification of the Collective and further appellate risk on the issue of collective treatment on the claims reserved for trial. Plaintiff maintains that this case is well-suited for collective adjudication because his claims rise and fall with ITG's uniform policies. Cottrell Decl., ¶ 82. However, the most recent Ninth Circuit authority addressing FLSA collective treatment present appellate risk. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1120 (9th Cir. 2018) (affirming order decertifying collective where the plaintiffs "did not offer sampling or expert statistical evidence tying the declarants' statements to the experiences of the party plaintiffs or of the workforce generally"). Plaintiff had intended to present representative testimony at trial to demonstrate that they were not provided overtime wages for work performed off-the-clock. Cottrell Decl., ¶ 83 Thus, even if ITG was unable to successfully decertify the Collective, depending on how the Ninth Circuit would apply *Campbell* on appeal, Plaintiff faced the risk that a verdict could be vacated if it was unsupported by statistical analysis or sampling. *Id*.

The risks discussed above all reinforce the strength of the recovery here, which offers a guaranteed, significant value to the Collective that fairly and reasonably accounts for the very real risks and delays of continued litigation, trial, and appeal. *Id.*, ¶¶ 87-88.

### 4. The Settlement compares very favorably with other recent settlements of highly analogous claims.

As discussed above, the net recovery provides approximately $7,041 per Collective member, or approximately $163 per workweek. This average recovery compares very favorably with settlements in other highly analogous cases. See, e.g., *Flores v. ADT LLC*, No. 1:16-cv-0029-AWI-JLT, 2018 U.S. Dist. LEXIS 31784, at *37 (E.D. Cal. Feb. 27, 2018) (recognizing average share of $760 per Service Technician for California wage and hour class claims comparable to other court-approved wage and hour settlements); *Alcantar v. Hobart Serv.*, No. EDCV 11-1600 PSG (SPx), 2018 U.S. Dist. LEXIS 221900, at *12 (C.D. Cal. Aug. 13, 2018) (finding California class and

1  PAGA settlement representing recovery of 34% of total damages owed to service technicians for

2  claims, including drive time and off-the-clock work, well within the range of possible approval);

3  *Morgret v. Applus Techs., Inc.*, No. 1:13-cv-01801-JLT, 2015 U.S. Dist. LEXIS 70654, at *25-27

4  (E.D. Cal. May 29, 2015) (finding average recovery of $3,068.18 to California wage and hour class

5  members, representing 35% of the estimated value of unpaid wages for off-the-clock work and

6  unpaid meal and rest breaks premiums, adequate compensation to class members).  As another

7  example, in *Soto v. OCC*, a FLSA collective and California and Washington law class action case

8  alleging off-the-clock work and noncompliant meal and rest periods, the average recovery per class

9  member was $1,162.70. *Soto et al. v. O.C. Communications, et al.*, No. 17-cv-00251 (N.D. Cal.

10 Oct. 23, 2019), Order at ECF No. 305 (Chhabria, J) (approving wage and hour settlement involving

11 cable installers represented by Class Counsel here where Gross Settlement Amount (inclusive of

12 fees and costs) represented approximately 17.2% of total potential exposure).

13     These are just a few comparators illustrating the strength of the recovery here.

14 **V.**     **THE SETTLEMENT IS ALSO REPRESENTS A FAIR AND REASONABLE**

15           **RESOLUTION TO THE PAGA CLAIMS AT ISSUE**

16     **A.  The Settlement Advances the PAGA's Purpose.**

17     The PAGA provides an enforcement mechanism for California's Labor Code by enlisting

18 individual plaintiffs as private attorneys general to recover civil penalties for the state, with a share

19 also going to the individual plaintiffs and other employees. *See Arias v. Superior Court*, 46 Cal. 4th

20 969, 980 (2009). In enacting PAGA, the Legislature expressly stated that "the only meaningful

21 deterrent to unlawful conduct is the vigorous assessment and collection of civil penalties as

22 provided in the Labor Code." Stats. 2003 ch. 906, § l(b). The Legislature thus determined that it is

23 "in the public interest to allow aggrieved employees, acting as private attorneys general, to recover

24 civil penalties for Labor Code violations, with the understanding that labor law enforcement

25 agencies were to retain primacy over private enforcement efforts." *Arias*, 46 Cal. 4th at 980. Under

26 this regime, Plaintiff, acting as private attorney general and proxy for the State of California, filed

27 this action seeking civil penalties for ITG's alleged violations of the Labor Code.

28     While Court approval is required for PAGA settlements, the PAGA does not establish any

standards for the review of PAGA settlements and no Court has definitively identified the applicable standard. *See* Labor Code § 2699(1)(2); *Jordan v. NCI Group*, No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) ("'[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement.") (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc*., 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017).

In reviewing PAGA settlements, courts have recognized that PAGA settlements must be viewed in light of the PAGA's public purpose, namely augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance with California's labor law. *See, e.g., Vargas v. Central Freight Lines*, No. 16-cv-00507-JLB, 2017 WL 4271893, *6 (S.D. Cal. Sept. 25, 2017); *Ramirez* 2017 U.S. Dist. LEXIS 137272. "[T]he Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Jordan*, 2018 U.S. Dist. LEXIS 25297, at *5. The proposed Settlement here is fair and reasonable considering the purposes of the PAGA.

The Settlement enforces the PAGA's purpose. The $40,000 penalty in this case serves as a warning to ITG and to employers throughout California that failing to ensure strict compliance with the Labor Code will lead to expensive repercussions. If approved by the Court, the ensuing penalty will achieve PAGA's objectives by (1) holding an employer accountable for its violations of the Labor Code, (2) deterring future violations of the Labor Code by ITG and other employers, (3) collecting penalties from an employer and recovering 75% of the penalties i.e., $30,000, on behalf of the State of California for purposes of enforcement and education; and (4) distributing 25% of the penalties, *i.e.*, $10,000 to the PAGA Employees pursuant to Labor Code § 2699(i).

This penalty shows ITG and other employers that having compliant policies is insufficient if those policies are not strictly enforced. This settlement encourages employers to expend additional resources to ensure that they pay employees for all hours worked and authorize and permit meal and rest breaks and deter other violations of the Labor Code. In addition, the Settlement will result

19

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.*, Case No. 3:19-cv-01484-WHA

1  in a large payment to the LWDA to use for furthering its mission of protecting workers as well as

2  reasonable payments to the Aggrieved Employees which do not require them to release their

3  individual claims, but simply deter such Technicians from asserting standing to represent any future

4  PAGA claims.

5  **B.    The Settlement Provides a Fair and Reasonable Resolution for the State of**

6  **California and the Aggrieved Employees.**

7  Not only does the Settlement serve as a deterrent to future violations, but the result achieved

8  is well within the range of reasonableness based on the underlying facts and the risks faced by

9  Plaintiff in proving these claims. "A PAGA action is at heart a civil enforcement action filed on

10  behalf of and for the benefit of the state, not a claim for class relief." *Baumann v. Chase Inv. Servs.*

11  *Corp.*, 747 F.3d 1117, 1124 (9th Cir. 2014). "In determining whether the proposed settlement falls

12  within the range of reasonableness, perhaps the most important factor to consider is plaintiffs'

13  expected recovery balanced against the value of the settlement offer*." O'Connor v. Uber*

14  *Technologies, Inc.*, 201 F. Supp. 3d 1110, 1120-21 (N.D. Cal. 2016) (citing *Cotter v. Lyft, Inc.*, 176

15  F. Supp. 3d 930, 935 (N.D. Cal. Apr. 7, 2016)). A court's focus is thus not the amount employees

16  ultimately receive as a result of a settlement, but on whether the settlement achieves PAGA's

17  objectives, even if it represents only a portion of an employer's total exposure.

18  The Settlement achieved here represents a reasonable result for both the State of California

19  and the Aggrieved Employees. The Net PAGA Amount of $10,000 to be distributed to the

20  Aggrieved Employees works out to approximately $42 per Aggrieved Employee, or approximately

21  3% of the total amount Aggrieved Employees could have obtained through a best-case scenario.

22  Cottrell Decl., ¶ 67.  As discussed *supra*, Section IV.B.1, Plaintiffs calculated the best-case scenario

23  would result in ITG's total exposure of $1,270,219 (*i.e.*, following allocation of 75% of this

24  exposure to the LWDA, this represents a total exposure of $1,334.26 per Aggrieved Employee).

25  *Id.*, ¶¶ 63.  These calculations are based on a $100 per pay period penalty, as recent case law found

26  that an employer cannot be presumed to be aware that its continuing underpayment is a violation

27  subject to the "subsequent" violation rate of $200 until the employer is notified it is in violation of

28  the Labor Code by the Labor Commissioner or a court. *See Bernstein v. Virgin Am., Inc.,* Nos. 19-

15382, 20-15186, 2021 U.S. App. LEXIS 5197, at *35 (9th Cir. Feb. 23, 2021); *see also, Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (Ct. App. 2008); *see* Cottrell Decl., ¶ 63. These calculations are further based on the assumption that each Aggrieved Employee suffered an average of 2 to 3 Labor Code violations per pay period.[14]

As is the case here, a settlement that represents only a fraction of the potential recovery is still reasonable.  *See*, e.g., *In Re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'")(citation omitted). This District is generally cautious about PAGA settlements representing less than 1% of the total value of a PAGA claim, but not regarding PAGA settlements representing 1% or more of the total value of a PAGA claim. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972-73 (N.D. Cal. 2019) (collecting cases discussing settlements of less than 1% of the total value of a PAGA claim); *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268, at *25 n.3 (N.D. Cal. May 5, 2021) (noting the PAGA portion of a proposed settlement representing 2.4% of total exposure under the PAGA exceeded the 1% benchmark "and therefore does not invoke the additional concerns examined in *Haralson*"). The reasoning for this approach is multifaceted; however, one of the major concerns regarding PAGA settlements is that PAGA penalties may be reduced at a court's discretion.  "A trial court's discretion to reduce PAGA penalties might be a reason to ultimately discount the value of PAGA claims, perhaps even significantly, in reaching a settlement. However, before the court could exercise that discretion it would have to know the actual estimated values of the PAGA claims." *Gonzales v. CoreCivic of Tennessee, LLC,* 2018 WL 4388425, at *6-9 (E.D. Cal. Sept. 13, 2018). The Court could, and likely would, exercise its discretion pursuant to Labor Code section 2699(e)(2) to award an amount less that the maximum

---

[14] Plaintiff's Counsel's estimates are based on their investigation, interviews with Technicians, and cross-referencing of ITG's data and documents. Based on this investigation, Plaintiff's Counsel determined that certain Labor Code violations did not occur every pay period (*e.g.*, failure to provide meal and rest periods, failure to reimburse for necessary business expenditures, waiting time penalties, failure to provide timely and compliant itemized wage statements, and violations regarding off-the-clock work), and estimated that 2.5 violations per pay period was a reasonable estimate of the PAGA violations per pay period per Aggrieved Employee. Cottrell Decl., ¶¶ 62-63.

21

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

1    civil penalty amount based on the facts and circumstances of the case.

2         Here, if the case were to proceed to judgment, multiple factors could lead the Court to award

3    a lower penalty, including that ITG had a compliant written policy, ITG paid hundreds of meal

4    period premiums during the claims period, submitted multiple declarations showing Technicians

5    received all proper pay, and finally because of further documents and Rule 30(b)(6) testimony

6    supporting the contention that Technicians took the majority of their meal breaks and were required

7    to enter responses stating whether they would or would not be taking their breaks and why. Cottrell

8    Decl., ¶¶ 76-78.

9         This would have required Plaintiff to prevail on his argument that time spent by Technicians

10   driving to the warehouse or the first job site at the beginning of the day, and back to their homes

11   from their last job sites at the end of the day, is compensable under the California law, which as the

12   Court observed in its prior order denying approval of settlement that ITG "ably contest[ed]"

13   Plaintiff's claims, undercutting Plaintiff's California minimum wage and overtime claims. *See* ECF

14   No. 236, at 4:12-19.

15        As is the case with off-the-clock claims under the FLSA, for PAGA-side of this action,

16   Plaintiff would have presented evidence from numerous Aggrieved Employees that drive-time was

17   generally unpaid and off-the-clock, but Plaintiff faced the risk that a jury would credit contrary

18   evidence and preclude a finding that Aggrieved Employees drove off-the-clock for work while

19   under the control of ITG every day without proper compensation. Cottrell Decl., ¶ 80; *see also, e.g.,*

20   *Morillion v. Royal Packing Co*., 22 Cal. 4th 575, 578 (2000) (employees must be compensated for

21   all time "during which an employee is subject to the control of an employer" under California law).

22   This includes the issue of whether the jury could take into consideration whether drive-time to and

23   from the first job site/warehouse and last job site, respectively, constitutes off-the-clock work at all

24   under California law. *Id*., ¶ 80.  Although Plaintiff planned to submit evidence such instances, it is

25   not clear how the jury would be instructed. *See, e.g., Morillion*, 22 Cal. 4th at 578 (a determination

26   of the employer's control of the employee during mandatory travel time is necessary to show

27   whether such travel time is compensable).

28        All other off-the-clock work would be further contingent on ITG knowing such work was

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA

occurring, an issue Plaintiff would need to prove at trial. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051, 139 Cal. Rptr. 3d 315, 273 P.3d 513 (2012) (Liability for off-the-clock work claims "is contingent on proof [that the employer] knew or should have known off-the-clock work was occurring."); *Morillion*, 22 Cal. 4th at 585; *White v. Starbucks Corp*., 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007) ("To prevail on his off-the-clock claim, [plaintiff] must prove that [the employer] had actual or constructive knowledge of his alleged off-the-clock work."). "[T]hat employees are clocked out creates a presumption they are doing no work, a presumption [the plaintiffs] have the burden to rebut." *Brinker Rest. Corp*., 53 Cal. 4th at 1051.

ITG was also prepared to submit – and indeed, already had submitted – additional evidence that, as a matter of policy and practice, Technicians were prompted to take their meal periods and were required to respond as to whether they would be taking their meal periods. ECF No. 142, at 11-12, n. 50-62. Although Plaintiff planned to submit evidence that such prompts and/or the relevant underlying data were insufficient to show that compliant meal periods were provided for the entirety of the relevant time period, it was unclear as to whether the Court would agree upon a full showing of the evidence. Cottrell Decl., ¶¶ 77-78.

Even if the Court did not discount the value of the PAGA claims at issue, to obtain the best-case scenario result at trial, Plaintiff would have had to prove that *all* Aggrieved Employees suffered 2 to 3 Labor Code violations *each* pay period. *Id*. at ¶ 84.[15] Plaintiff recognizes that there is also a significant chance that the Court would limit penalties by declining to stack penalties (assess penalties for derivative violations for a particular pay period for a particular employee). *Smith v. Lux Retail N. Am., Inc*., No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal. June 13, 2013) (Alsup, J.) ("For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted five (count them, five) separate labor code violations that could lead to statutory penalties. One is a penalty for failure to pay overtime at the appropriate rate (§§ 510, 558). Another is for denying employees minimum wage and overtime (§ 1194). But is it plausible that we would really pile one penalty on another for a single substantive wrong?"). Plaintiff's exposure

---

[15] If Plaintiffs were disallowed from "stacking" PAGA penalties each pay period, and calculated that all Aggrieved Employees suffered one California Labor Code violation each pay period, the Net PAGA Amount would represent 8% of the total exposure of $508,088. Cottrell Decl., ¶ 67.

1   analysis assumes stacking; however, there is a significant chance that the Court would decline to

2   stack on derivative violations for an employer that maintains comprehensive, facially compliant

3   policies and training.[16]  Cottrell Decl., ¶ 84.

4         Plaintiff would further likely need to move for and defend against motions for summary

5   judgment or adjudication, and would have been further required to take his claims to trial. Trials

6   are inherently risky for all parties. *Id.,* ¶ 85. Although Plaintiff believes that he could have been

7   successful in proving these claims, and that ITG's evidence would not have been as persuasive, a

8   trial on the meal period claim would have carried a high degree of risk.[17] *Id.*

9         Finally, there is the risk that even before Plaintiff successfully prevailed in proving liability

10  as to all of his claims, the Court would strike Plaintiff's PAGA claims for lack of manageability, a

11  requirement now affirmed by one California appellate court ruling in *Wesson v. Staples the Off.*

12  *Superstore, LLC*, 68 Cal. App. 5th 746, 283 Cal. Rptr. 3d 846, 859 (2021), *reh'g denied* (Sept. 27,

13  2021), *rev'w denied* (Dec. 22, 2021) ("courts have inherent authority to ensure that PAGA claims

14  can be fairly and efficiently tried and, if necessary, may strike a claim that cannot be rendered

15  manageable").[18] *See* Cottrell Decl., ¶ 86, n. 5.

16        All of these risks would have to be taken, after a lengthy abeyance which was ordered

17  pending arbitration of arbitrable Labor Code and FLSA claims that had been compelled to

18  arbitration.  Given all these risks, Plaintiff's counsel believes that this settlement is reasonable, and

19

20  ---

[16] Even without stacking derivative violations, a given employee may present multiple PAGA
21  violations (*e.g.*, for meal and rest breaks, off-the-clock work, and failure to reimburse) for a
    particular pay period. There is a chance that the Court would decline to assess multiple violations
22  per pay period per employee.
    [17] For example, on the derivative claims, ITG would have argued that no penalties for waiting-time
23  violations can be awarded unless the failure to pay wages is "willful," an element that Plaintiff
    acknowledges given ITG's policies and enforcement would have been difficult to prove. *See* Labor
24  Code § 203; 8 C.C.R. 13520 ("[a] willful failure to pay wages within the meaning of Labor Code
    section 203 occurs when an employer intentionally fails to pay wages to an employee when those
25  wages were due."); *Smith v. Rae Venter Law Group*, 29 Cal. 4th 345, 354 n.2 (2002) (holding that
    a good faith dispute that any wages are due will preclude an award of waiting time penalties). ITG
26  would also have argued that an employer's failure to pay wages is not willful unless it reached the
    standard of "gross negligence or recklessness*." See Amaral v. Cintas*, 163 Cal. App. 4th 1157,
27  1201 (2008).
    [18] Another potential risk prior to trial could be presented based on the Supreme Court's impending
28  ruling in the case *Viking River Cruises, Inc. v. Moriana*, No. 20-1573, in which the Supreme Court
    will decide whether the Federal Arbitration Act requires enforcement of bilateral arbitration
    agreements precluding litigation of representative claims under the PAGA outside of arbitration.

24

1  indeed excellent, based on the strength of the claims, the size of the group of aggrieved employees,

2  and the risks of going to trial.

3  ## VI.    THE PROPOSED NOTICE PLAN IS REASONABLE AND APPROPRIATE

4  If the Settlement is approved, Collective Members and Aggrieved Employees will receive a

5  notice that plainly and accurately informs them of the nature of the action; the definition of the

6  Collective and Aggrieved Employees; the identity of Plaintiff's Counsel; the essential terms of the

7  Settlement; the attorneys' fees and costs, service award, and administrative costs (if approved by

8  the Court) that would be taken out of the Gross Settlement Amount before distribution to the

9  Collective Members and Aggrieved Employees; and instructions as to how to obtain additional

10  information regarding the case and settlement. *See* Proposed Notice, Ex. C to Settlement.[19]

11  The Parties have agreed to use CPT Group, Inc. as the Settlement Administrator. Settlement,

12  ¶ 2.q.  The Settlement provides that the Administrator will send Collective Members a Notice of

13  the Settlement and a Settlement Award check to each Collective Member and Aggrieved Employee

14  by U.S. mail days following an instruction to the postmaster to forward undeliverable mailings or

15  return them to be re-mailed to a provided forwarding address. *Id*. at ¶¶ 23.b, 29-30.   The

16  Administrator also will perform a skip-tacking check on all undeliverable or returned checks. *Id*. at

17  ¶ 31.  When there are 90 days remaining during the 180 check-cashing period, the Administrator

18  will also send reminder letters via U.S. mail and email to all individuals who have yet to cash their

19  settlement checks, and will further call those who have yet to cash their checks during the last 60

20  days of the check-cashing period._ *Id*. at ¶ 35.

21  This plan is more than sufficient to provide the best practicable notice under the

22  circumstances. *See Bush*, 2017 U.S. Dist. LEXIS 31332, at *5-6 (approving similar notice

23  accompanying individual settlement payments in FLSA action).

24  ## VII.    CONCLUSION

25  For the foregoing reasons, Plaintiff's motion should be granted in its entirety.

26

27  [19] In the event the Court approves attorneys' fees and costs, or settlement administration costs that
28  are contrary to Plaintiff's requests or contrary to what is provided in the Proposed Notice, Plaintiff
shall revise the Proposed Notice accordingly.

1

2      Date: April 1, 2022                           Respectfully submitted,

3                                                    */s/ Carolyn Hunt Cottrell*
                                                     Carolyn Hunt Cottrell (SBN 166977)
4                                                    Ori Edelstein (SBN 268145)
                                                     Michelle S. Lim (SBN 315691)
5                                                    **SCHNEIDER WALLACE**
6                                                    **COTTRELL KONECKY LLP**
                                                     2000 Powell Street, Suite 1400
7                                                    Emeryville, CA 94608
                                                     Telephone: (415) 421-7100
8                                                    Facsimile: (415) 421-7105
                                                     ccottrell@schneiderwallace.com
9                                                    oedelstein@schneiderwallace.com
                                                     mlim@schneiderwallace.com
10

11                                                   Camille Fundora Rodriguez (*pro hac vice*)
                                                     Lane L. Vines (*pro hac vice*)
12                                                   **BERGER MONTAGUE PC**
                                                     1818 Market Street, Suite 3600
13                                                   Philadelphia, PA 19103
                                                     Telephone: (215) 875-3000
14                                                   Facsimile: (215) 875-4604
                                                     crodriguez@bm.net
15                                                   lvines@bm.net
16

17                                                   *Attorneys for Plaintiff, the Collective and*
                                                     *and Aggrieved Employees on behalf of the*
18                                                   *State of California*

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT
*Monplaisir v. Integrated Tech Group, et al.,* Case No. 3:19-cv-01484-WHA