UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL MONPLAISIR, et al.,

    Plaintiffs,

v.

INTEGRATED TECH GROUP, LLC, et al.,

    Defendants.

No. C 19-01484 WHA

**ORDER RE MOTION FOR SETTLEMENT APPROVAL AND MOTION FOR ATTORNEY'S FEES**

## INTRODUCTION

In this long-running wage-and-hour collective action, the parties move for approval of their collective settlement under the Fair Labor Standards Act and plaintiff's counsel move for attorney's fees and costs. To the extent stated below, the motions are **GRANTED**.

## STATEMENT

Prior orders detailed our facts (Dkt. Nos. 76, 236, 254). In brief, plaintiff worked as a technician for defendants Integrated Tech Group, LLC, and ITG Communications, LLC, which provide home installation services for cable and telecommunications equipment. The complaint alleges that defendants required its technicians to work significant portions of their day off-the-clock, including during meal periods and time spent driving. Additionally, defendants allegedly pressured employees to alter or underreport time and systemically undercalculated their pay.

Plaintiff sued in March 2019. An August 2019 order conditionally certified a nationwide collective under FLSA (Dkt. No. 76). A March 2020 order, however, compelled many

members of the collective to arbitration, which appeared to cut the collective from nearly 380 to 132 members (Dkt. Nos. 167; 228 at 6). Undaunted, plaintiff moved to certify a Rule 23 class composed solely of California employees, the vast majority of which had signed arbitration agreements (Dkt. No. 128). Then, before any ruling on class certification, the parties moved for preliminary approval of a proposed settlement on behalf of both the 380 member FLSA nationwide collective and the mostly distinct 284 member putative California class (Dkt. No. 228). A November 2020 order rejected the proposal, finding that the settlement represented a poor recovery, would result in a windfall for counsel, and would unfairly burden the subset of plaintiffs with no obligation to arbitrate (Dkt. No. 236). A subsequent order then rejected plaintiff's bid to certify the class of California employees because only sixteen members of the putative class had not been compelled to arbitrate (Dkt. No. 254).

After all the foregoing, we are left with a conditionally certified FLSA collective of 133 members and no certified Rule 23 class. All members of the collective have affirmatively opted-in. None of them have signed arbitration agreements. The parties now move for approval of a proposed settlement that would release the collective's FLSA claims and all aggrieved employees' PAGA claims for a gross amount of $1,350,000. This order follows full briefing and oral argument.

**ANALYSIS**

The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provisions of the Act. *See* 29 U.S.C. § 216(b). Further, employees may litigate jointly if they are similarly situated and they affirmatively opt-in to the joint litigation. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).

"The FLSA places strict limits on an employee's ability to waive claims for unpaid wages or overtime . . . for fear that employers may coerce employees into settlement and waiver." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (Judge Cynthia Bashant) (citations omitted). Accordingly, any settlement of FLSA claims must be approved by a district court or the Labor Secretary. *See Otey v. Crowdflower, Inc.*, 2016 WL

304747, at *3 (N.D. Cal. Jan. 26, 2016) (Judge Jon Tigar). The FLSA provides for such approvals to include an award of reasonable fees and costs. *See* 29 U.S.C. § 216(b).

Our court of appeals has not established the criteria that a district court should employ to evaluate a FLSA settlement. *See, e.g., Otey*, 2016 WL 304747, at *3. Most district courts in this circuit first consider whether FLSA collective members are similarly situated to each other for the purposes of final collective certification. *Ibid.*; *see also* 29 U.S.C. § 216(b) (providing that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated"). If the collective members are similarly situated, most district courts then assess whether the settlement represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey*, 2016 WL 304747, at *3 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

### 1.   FINAL COLLECTIVE CERTIFICATION.

Even when the parties settle, courts "must make some final class certification finding before approving a collective action settlement." *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010) (Judge Virginia Phillips) (citations omitted). Most courts in this circuit have adopted a two-step certification analysis for FLSA collective actions. *See Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 427 (N.D. Cal. 2010) (Judge Samuel Conti). A prior order has already approved conditional certification under the first step (Dkt. No. 76). At the second step of the certification analysis, after discovery, a district court engages in "a more searching review," usually on a motion for decertification by the defendant. *Velasquez*, 266 F.R.D. at 427. At both stages, "the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)." *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) (Judge Edward Chen).

Here, defendants do not oppose collective action treatment of plaintiff's FLSA claims for purposes of settlement. Moreover, this order finds that members of the collective are similarly situated in that they performed similar work for defendants under similar conditions. In support of plaintiff's earlier motion for conditional certification, plaintiff's counsel provided

1   declarations from nine technicians stating that they had similar job duties, typically worked over
2   forty hours a week, were pressured to work during lunch breaks, and were subjected to a similar
3   compensation structure (Dkt. No. 76).  In support of the instant motion, plaintiff's counsel
4   represented that their subsequent investigation — which included conducting more than one
5   hundred interviews with technicians, taking and defending over a dozen depositions, and
6   analyzing over 10,000 documents produced by defendants — has reinforced their belief that
7   technicians from various states were subjected to similar work conditions and compensation
8   schemes (*see, e.g.*, Cottrell Decl. ¶ 60, 63).  For example, plaintiff's analysis of GPS data
9   produced by defendants suggested that many technicians regularly spent over an hour of driving
10  time per day off-the-clock (*id.* at ¶ 63).  Many technicians also reported an average of two to
11  three meal or rest breaks per week that were either missed, interrupted, or untimely (*ibid*.).  This
12  is sufficient to show that collective members are similarly situated and thus that final collective
13  certification is warranted for settlement purposes under 29 U.S.C. 216(b).

**2.     FLSA SETTLEMENT.**

This order now turns to the assessment of the settlement proposal.  This order will first consider whether the settlement would resolve a bona fide dispute over FLSA provisions, and then evaluate whether the proposed settlement is fair and reasonable.

**A.     BONA FIDE DISPUTE.**

District courts reviewing FLSA settlements must ensure that the settlement resolves claims over a "bona fide dispute." *Selk*, 159 F. Supp. 3d at 1172 (citing *Lynn's Food Stores*, 679 F.2d at 1355).  "The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Slezak v. City of Palo Alto*, 2017 WL 2688224, at *2 (N.D. Cal. June 22, 2017) (Judge Lucy Koh) (citations omitted).  "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Selk*, 159 F. Supp. 3d at 1772.

Here, defendants have steadfastly contested plaintiff's allegations on both legal and factual grounds (Br. 15–17). Defendants had facially compliant written policies and submitted declarations from several technicians stating that they were compensated properly, including for meal breaks. Discovery also undermined the strength of some of plaintiff's claims. For example, data produced by defendants showed that some technicians regularly clocked-in pre-shift and were paid for that time. Defendants also provided deposition testimony suggesting that technicians were paid for driving time and meal breaks and produced proof that they paid hundreds of meal period premiums during the claims period. Moreover, as a legal matter, plaintiff would have had to litigate the unsettled question of whether driving time to and from the technician's first job site was compensable. Accordingly, while plaintiff maintains that he has strong evidence supporting his claims, plaintiff nonetheless faced some risk at trial. The settlement would thus resolve a bona fide dispute over the collective's FLSA claims.

### B. THE SETTLEMENT IS FAIR AND REASONABLE.

To determine whether a settlement is fair and reasonable, district courts frequently consider the factors that are used to evaluate Rule 23 class action settlements. *See Selk*, 159 F. Supp. 3d at 1172. However, because an employee must affirmatively opt-in to a FLSA collective to join the suit, FLSA collective actions do not implicate the same due process concerns as Rule 23 class actions. *Id*. n.3 (citing *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 906 n.9 (9th Cir. 2004)). Accordingly, most district courts focus their analysis on the following factors: (1) the collective's possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel; and (6) the possibility of fraud or collusion. *Id.* at 1173. This order will consider each factor in turn.

*First*, the settlement amount provides a strong recovery for the collective. The settlement agreement provides for a non-reversionary settlement amount of $1,350,000. Taking into account attorney's fees and other overhead, $970,000 is allocated to the FLSA collective, which averages out to approximately $7,293.23 per each of the 133 collective members. The

settlement represents about 96% of what plaintiff asserts is defendants' total exposure for the collective's FLSA claims. The settlement will also be distributed to collective members on a pro-rata basis based upon the number of weekly pay periods worked by each collective member. This factor supports approval.

The stage of the proceedings and the litigation risk faced by the parties also support settlement. As explained above, both sides conducted significant investigation into the collective's FLSA claims and accumulated sufficient evidence to introduce uncertainty as to the outcome at trial. The parties have taken over a dozen depositions and exchanged over 10,000 documents. A FLSA collective was certified. Hundreds of technicians were compelled to arbitrate. A motion for class certification was rejected. In short, this settlement was reached after the parties litigated for three years and both sides obtained significant victories. Thus, the *second* and *third* factors support settlement.

*Fourth*, the proposed release is properly limited to FLSA claims that were brought or could have been brought based on the facts alleged in the complaint. Further, each collective member will be provided notice of the scope of the release with their settlement check, and the release will not go into effect unless the check is cashed. Thus, the release ranks as adequate. As discussed at the motion hearing, counsel should clarify that cashing the check will likely result in the forfeiture of any wage and overtime claims that could have been brought under state law. Additionally, the settlement agreement should remove the publicity provision as discussed at the hearing.

*Fifth*, the views of counsel support settlement. Plaintiff is represented by two reputable law firms, Schneider Wallace LLP and Berger Montague PC, with significant experience settling employment actions like this one. Counsel assert that the instant settlement provides a better recovery to the collective than many other suits involving similar claims (*see, e.g.*, Cottrell Decl. ¶ 69).

*Sixth*, the settlement agreement does not raise concerns about fraud or collusion. Both sides have vigorously litigated this case. The settlement represents a strong recovery for collective members. The agreement was reached after negotiations supervised by wage-and-

hour mediator Jeffrey A. Ross (not to be confused with San Francisco Superior Court's Judge Jeffrey S. Ross).

In sum, having considered the foregoing factors, this order finds the proposed settlement is fair and reasonable so as to warrant final approval. The Court shall retain jurisdiction to enforce the terms of the settlement. Accordingly, final approval of the proposed FLSA settlement and plan of allocation is **GRANTED** to the extent stated above.

### 3. PAGA CLAIMS.

In addition to settling the FLSA collective's claims, the settlement also wraps in the release of the PAGA claims of 238 California aggrieved employees for a total of $40,000. Three-fourths of that amount is allocated to the LWDA. Accordingly, $10,000 is left for the aggrieved employees, or $42 per employee. The settlement's allocation to PAGA claims is comparable to other settlements approved by district courts in this circuit and is a minimal but acceptable amount to vindicate the LWDA's interest in enforcing California's labor laws. *See, e.g.*, *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972–73 (N.D. Cal. 2019) (Judge Jon Tigar) (collecting cases discussing comparable settlements). Counsel's request for approval of the proposed PAGA settlement is **GRANTED**.

### 4. INCENTIVE AWARD.

Counsel seek a $500 service award for plaintiff Paul Monplaisir. This order recognizes the risk that service award payments may incentivize a representative to support a marginal settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003). Here, however, plaintiff has submitted a declaration stating that he contributed over fifty hours of time in support of this case, including sitting for a deposition, sitting in meetings, and reviewing settlement documents (Monplaisir Decl. ¶¶ 7–18). The requested $500 award is reasonable. The request is accordingly **GRANTED**.

### 5. ATTORNEY'S FEES AND COSTS.

Plaintiff's counsel seek attorney's fees in the amount of $227,000. "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, F. Supp. 3d at 1164; *see also* 29 U.S.C. § 216(b)

7

(providing that, in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). For district courts applying the percentage-of-the-fund method, our court of appeals has "established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "The benchmark percentage should be adjusted . . . when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *See Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Counsel claim a lodestar of $3.9 million, but they seek considerably less than this: $227,000. Their requested attorney's fees represent 16.8% of the total common fund. This is a reasonable percentage, particularly given their much higher claimed lodestar. This request for attorney's fees is therefore **GRANTED**.

Class counsel also seek $133,482.97 in litigation costs. These costs include travel expenses, document production expenses, deposition fees and transcripts, postage, filing and miscellaneous fees, copying and printing, and computer legal research. While the costs are reasonable, counsel has not carved out which costs were expended in support of the certified FLSA collective and which costs were spent on litigation that had no benefit to the collective, including extensive litigation over arbitration agreements and an ill-advised motion for class certification (*see, e.g.*, Dkt. Nos. 128, 228). Consequently, this order will **AWARD $100,000** in costs.

**CONCLUSION**

To the extent stated, final certification and approval of the collective's settlement agreement with defendants is **GRANTED** and the settlement agreement shall be consummated in accordance with its terms. In particular, as discussed at oral argument, the publicity provision should be removed and the notice to the collective should be modified to clarify the probable effect of the release. The collective's FLSA claims against defendants are hereby dismissed with prejudice as provided in the settlement agreement. The Court shall retain exclusive

jurisdiction over the settlement agreement as described therein, including the administration and consummation of the settlement.

Counsel's further request for final approval of the plan of allocation for the settlement is **GRANTED**. Counsel's further request for authorization for counsel and CPT Group to begin administration and distribution of the proceeds of the settlement in accordance with the plan of allocation is **GRANTED**. Counsel's further request for approval of Florida Legal Services as the *cy pres* beneficiary of unclaimed funds as provided in the settlement agreement is **GRANTED**.

This order further **AWARDS** attorney's fees in the amount of **$227,000.** Defendant shall wire transfer fifty percent of the total $227,000 as of the effective date as defined in the settlement, divided proportionately among the two law firms as requested in counsel's original request for fees. The remaining fifty percent shall be paid when defendants certify that all funds have been properly distributed and the file can be completely closed**.**

This order further **AWARDS** counsel costs in the amount of **$100,000**, also divided proportionately between the two law firms as originally requested. This amount shall be paid promptly from the settlement fund. Further costs and expenses under **$12,500** that may be incurred in connection with the settlement administration process may be disbursed from the settlement fund without further application to the Court.

**IT IS SO ORDERED.**

Dated: May 12, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE